******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

NYRON DUMAS *v.* COMMISSIONER
OF CORRECTION
(AC 36974)

Beach, Sheldon and Prescott, Js.

*Argued January 19—officially released September 6, 2016*

(Appeal from Superior Court, judicial district of
Tolland, Cobb, J.)

*Heather Clark*, assigned counsel, for the appellant
(petitioner).

*Melissa L. Streeto*, senior assistant state's attorney,
with whom, on the brief, were *Kevin D. Lawlor*, state's
attorney, and *Angela R. Macchiarulo*, senior assistant
state's attorney, for the appellee (respondent).

*Opinion*

BEACH, J. The petitioner, Nyron Dumas, appeals following the denial of his petition for certification to appeal from the judgment of the habeas court dismissing in part and denying in part his petition for a writ of habeas corpus. He claims that the habeas court abused its discretion in denying his petition for certification to appeal and, as to the merits, improperly denied a count of his habeas petition for failure of proof. We disagree with the petitioner and agree with the result reached by the habeas court, but on an alternative ground.

The following facts and procedural history are relevant to the petitioner's appeal. In February, 1999, the then fourteen year old petitioner was at an apartment visiting another person. While there, he and the victim exchanged words that led to a heated argument. When he was asked to leave the apartment, the petitioner did so. He went outside, below the apartment's balcony, and yelled at the victim to come outside. The victim went onto the balcony and the petitioner fatally shot the victim in the abdomen. In October, 1999, when the petitioner was fifteen years old, he pleaded guilty to manslaughter in the first degree with a firearm in violation of General Statutes § 53a-55 (a). That charge carried a maximum penalty of forty years imprisonment and a minimum of five years imprisonment. General Statutes §§ 53a-55a, 53a-35a (5). At the time of the guilty plea, the state noted that the agreement called for thirty years incarceration with a right to argue for less. The state indicated that, because of the petitioner's age, the recommendation was for ten years less than the maximum sentence permitted by statute. At sentencing, the defendant's attorney stated, "Obviously, I'm going to argue to the court to consider his age; and I think it is a very critical component in this particular sentencing." The court concluded, "This incident, with all the circumstances I've heard, he took the life of the victim here. There has not been any showing of any just cause. The state has given consideration in reducing the charge and the plea agreement both to the factors I have cited, having no prior record and his age. . . . The unfortunate circumstance of the age or the loss of loved ones around him is that he did not understand the value of human life and the blessing he . . . did have, despite all the trials that he had been given as well. . . . The only way that the court can impress upon him the value of a human life, particularly at his age, is by the impact my sentence will have on his own." The court then sentenced the petitioner to thirty years incarceration.

In October, 2008, the self-represented[1] petitioner filed an eighteen count petition for a writ of habeas corpus. In count eleven, which is the only count implicated in this appeal, the petitioner alleged that "the sentence imposed was inappropriate and disproportionate in

light of the nature of the offense, the character of the offender, the protection of public interest and the deterrent, rehabilitative, isolative and denunciatory purposes for which the sentence was intended . . . . [T]he sentence imposed was unduly excessive in light of the petitioner's youth and diminished capacity at the time of the crime." (Citation omitted.) The petitioner attached to his petition a number of documents, including transcripts from the underlying criminal proceedings and several scholarly articles.

On May 1, 2014, the day the habeas trial was set to begin, the following colloquy occurred:

"The Court: Okay. All right. So, Mr. Dumas, are you ready to proceed to trial today?

"[The Petitioner]: No.

"The Court: Okay. Well, today's your trial day, so we're going forward.

"[The Petitioner]: Yeah, but I don't understand habeas law, so that's why I didn't file nothing.

"The Court: So, you didn't file anything?

"[The Petitioner]: No.

"The Court: . . . Eleven is an eighth amendment claim, as I read it in the most liberal sense, as I'm required to do . . . . Today is your trial day, so what happens at trial is that you're supposed to go forward and present evidence on those claims. . . . So, what evidence do you have to support your remaining claims . . . .[2] Are you prepared to present witnesses today?

"[The Petitioner]: No. The only thing I have, whatever is in that petition. That's it. . . .

"The Court: . . . Well, that's not evidence. Evidence is presented through witnesses and/or exhibits. So, you are telling me you have no witnesses that you wish to present on your claims?

"[The Petitioner]: Right now, no.

"The Court: Well, I'm reading count eleven in the broadest sense possible since he's pro se, and I think that could potentially be an eighth amendment claim, so I'm not dismissing that outright. However, I am going to deny the petition and dismiss it because the petitioner has not come forward with any evidence today, the day of his trial, to establish [count eleven]. The court has no choice but to deny the petition."[3] (Footnote added.)

The judgment file stated that count eleven was dismissed for failure to prosecute. Thereafter, the court denied the petition for certification to appeal, and this appeal followed.

In May, 2015, the respondent, the Commissioner of Correction, filed a late motion for rectification of the judgment file and a motion for permission to file the

late motion for rectification, arguing that the judgment file should be corrected to reflect a denial of the petition as to count eleven on the merits. This court denied the respondent's motion for permission to file a late motion for rectification. This court sua sponte ordered the habeas court to articulate whether it had intended to dismiss or deny count eleven. The habeas court articulated that "count 11 of the petition . . . was denied for lack of any proof."

On appeal, the petitioner claims that the court abused its discretion in denying his petition for certification to appeal and that the court erred in denying count eleven for lack of proof. He contends that, although the eleventh count of his habeas petition largely relied on *Roper* v. *Simmons*, 543 U.S. 551, 578, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005), his pleading, read broadly and realistically, included a claim invoking *Miller* v. *Alabama*,     U.S.    , 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012), and *Graham* v. *Florida*, 560 U.S. 48, 82, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010), which had not been decided by the United States Supreme Court when the petition was filed in 2008.[4] He argues that the eighth amendment claim presents a question of law properly reviewed under a plenary standard; thus, the habeas court erred when it denied the claim for lack of proof. He further argues that the documents attached to his habeas petition could properly have been reviewed as part of the expanded record pursuant to Practice Book § 23-36.

The respondent argues that the court properly denied count eleven and the petition for certification to appeal because the petitioner failed to present any evidence to support his claim, and the documents attached to the petition did not become part of an expanded record pursuant to Practice Book § 23-36.

We need not address the petitioner's claim that his rights secured by the eighth amendment were violated in the manner urged by the petitioner or his related procedural claims. Rather, we decide the case on an alternative ground, necessitated by the rapid advance of case law regarding juvenile sentencing procedure.

The constitutional law regarding the sentencing of juvenile offenders has been developing rapidly in recent years; thus, a brief overview may be helpful. The eighth amendment prohibits governmental imposition of "cruel and unusual punishments . . . ." U.S. Const., amend. VIII. "The eighth amendment's prohibition against cruel and unusual punishment is made applicable to the states through the due process clause of the fourteenth amendment to the United States constitution." *State* v. *Carrasquillo*, 290 Conn. 209, 211 n.7, 962 A.2d 772 (2009). "[T]he United States Supreme Court has indicated that at least three types of punishment may be deemed unconstitutionally cruel: (1) inherently barbaric punishments; (2) excessive and disproportionate punishments; and (3) arbitrary or discriminatory

punishments." *State* v. *Santiago*, 318 Conn. 1, 19, 122 A.3d 1 (2015). With respect to the second, the "United States Supreme Court has recognized that the eighth amendment contains a proportionality principle, that is, that punishment for crime should be graduated and proportioned to both the offender and the offense." (Internal quotation marks omitted.) *Casiano* v. *Commissioner of Correction*, 317 Conn. 52, 58–59, 115 A.3d 1031 (2015), cert. denied sub nom. *Semple* v. *Casiano*, U.S. , 136 S. Ct. 1364, 194 L. Ed. 2d 376 (2016). "[T]he United States Supreme Court decided a trilogy of cases that fundamentally altered the legal landscape for the sentencing of juvenile offenders. . . . In *Roper* v. *Simmons*, supra, 543 U.S. 578, the court held that the eighth and fourteenth amendments prohibit the imposition of the death penalty on juvenile offenders. In *Graham* v. *Florida*, supra, 560 U.S. 82, the court held that the eighth amendment prohibits the sentence of life without the possibility of parole for juvenile nonhomicide offenders. Most recently, in *Miller* v. *Alabama*, supra, 132 S. Ct. 2463–64, the court held that the eighth amendment prohibits mandatory sentencing schemes that mandate life in prison without the possibility of parole for juvenile homicide offenders, although a sentence of life imprisonment without the possibility of parole may be deemed appropriate following consideration of the child's age related characteristics and the circumstances of the crime. These federal cases recognized that [t]he concept of proportionality is central to the Eighth Amendment. Embodied in the Constitution's ban on cruel and unusual punishments is the precept of justice that punishment for crime should be graduated and proportioned to [the] offense." (Footnote omitted; internal quotation marks omitted.) *State* v. *Logan*, 160 Conn. App. 282, 288–89, 125 A.3d 581 (2015), cert. denied, 321 Conn. 906, 135 A.3d 279 (2016).

The respondent posits that claims made under *Graham* v. *Florida*, supra, 560 U.S. 48 (life sentence without possibility of parole for juveniles convicted of nonhomicide offense violates eighth amendment), are now moot because the October 1, 2015 enactment of Public Acts 2015, No. 15-84, § 1 (f) (1), amended parole procedures such that all juvenile offenders are now eligible for parole within certain time periods.[5] We agree and thus consider count eleven only to the extent that it makes a claim under *Miller*.

This court summarized Connecticut's recent history in the field of juvenile sentencing procedures in *Logan*: "In *State* v. *Taylor G.*, 315 Conn. 734, 738, 741, 110 A.3d 338 (2015), the defendant was fourteen and fifteen years old when he committed nonhomicide offenses for which the trial court imposed a total effective sentence of ten years imprisonment followed by three years of special parole. Our Supreme Court concluded that the ten and five year mandatory minimum sentences [that the defendant would serve concurrently], under which

the defendant is likely to be released before he reaches the age of thirty, do not *approach* what the [United States Supreme Court] described in *Roper, Graham* and *Miller* as the two harshest penalties. . . . The court reasoned that [a]lthough the deprivation of liberty for any amount of time, including a single year, is not insignificant, *Roper, Graham* and *Miller* cannot be read to mean that all mandatory deprivations of liberty are of potentially constitutional magnitude, and that the defendant will be able to work toward his rehabilitation and look forward to release at a relatively young age. . . .

"[I]n *Casiano* v. *Commissioner of Correction*, [supra, 317 Conn. 55], the petitioner was sixteen years old when he committed homicide and nonhomicide offenses for which the trial court imposed a total effective sentence of fifty years imprisonment without the possibility of parole pursuant to a plea agreement. Our Supreme Court determined that *Miller* applies retroactively to cases arising on collateral review, and that a fifty year sentence without the possibility of parole was the functional equivalent of life imprisonment without the possibility of parole and, therefore, subject to the sentencing procedures set forth in *Miller*. . . . The court observed that because the petitioner would be released from prison at the age of sixty-six and the average life expectancy of a male in the United States is seventy-six years, he would only have approximately ten more years to live outside of prison after his release. . . . The court explained that [a] juvenile is typically put behind bars before he has had the chance to exercise the rights and responsibilities of adulthood, such as establishing a career, marrying, raising a family, or voting. Even assuming the juvenile offender does live to be released, after a half century of incarceration, he will have irreparably lost the opportunity to engage meaningfully in many of these activities and will be left with seriously diminished prospects of his quality of life for the few years he has left. . . . The court concluded that a fifty year term and its grim prospects for any future outside of prison effectively provide a juvenile offender with no chance for fulfillment outside prison walls, no chance for reconciliation with society, no hope." (Citations omitted; footnotes omitted; internal quotation marks omitted.) *State* v. *Logan*, supra, 160 Conn. App. 291–93.

*Logan* was decided more than one year after the habeas court's decision in this case. In *Logan*, a panel of this court held that a thirty-one year sentence for murder and conspiracy to commit murder, imposed on a defendant who was seventeen years old at the time of the offenses, was not the equivalent of a life sentence because "even if he is not paroled, [he] will be able to work toward rehabilitation, and can look forward to release at an age when he will still have the opportunity to live a meaningful life outside of prison and to become

a productive member of society. Although the deprivation of liberty for any amount of time, including a single year, is not insignificant . . . *Miller* cannot be read to mean that all mandatory deprivations of liberty are of potentially constitutional magnitude." (Footnote omitted; internal quotation marks omitted.) Id., 293–94. The court concluded that thirty-one years was not the equivalent of a life sentence; relief pursuant to *Miller*, then, was unavailable to the defendant in *Logan*.

The legal landscape changed, then, after this case was decided in the habeas court. Most relevant to the disposition of this case, *Logan* was decided while this appeal was pending. *Logan* held that, as a matter of law, the imposition of a thirty-one year sentence did not trigger relief pursuant to *Miller*.

The petitioner in the present case was fourteen years old at the time of the offense and he received a thirty year sentence. Similar to the seventeen year old defendant in *Logan* who received a thirty-one year sentence, the petitioner in this case will be released before he is fifty years old even if he is not paroled.[6]

On June 27, 2016, we requested that the parties submit supplemental briefs on the question of "whether this court should consider the merits of this appeal if the habeas court could not afford practical relief in light of [*Logan*]." The gravamen of the respondent's brief was that the subject area is now controlled by *Montgomery* v. *Louisiana*, U.S. , 136 S. Ct. 718, 193 L. Ed. 2d 599 (2016), and General Statutes (Supp. 2016) § 54-125a (f), and that this case accordingly should be either dismissed or affirmed on the ground that the petitioner now has a constitutionally adequate remedy: he may demonstrate maturity in the context of a parole hearing.[7] The petitioner urged that circumstances in this case may be different from those in *Logan*, and argued that, in any event, *Logan* was wrongly decided.

We affirm on a different, but closely related, ground,[8] which is that the habeas court would now be obligated to deny relief pursuant to *Logan* regardless of whether the petitioner had met his burden of going forward with the presentation of evidence because his sentence was not functionally equivalent to a life sentence. We need not repeat the criteria set forth in *Logan* and cases cited therein; suffice it to say that if a thirty-one year sentence imposed on a juvenile offender does not violate the eighth amendment, then surely a thirty year sentence does not. The habeas court properly denied the petition for certification to appeal.

The appeal is dismissed.

In this opinion the other judges concurred.

[1] The petitioner filed a motion for appointment of habeas counsel, which the court granted. Habeas counsel later filed a motion for permission to withdraw, which the court also granted.

[2] The court dismissed counts one through ten, twelve, thirteen and fifteen because of procedural default, and determined that counts seventeen and

eighteen did not raise separate claims. The court questioned the petitioner as to what evidence he had to support the remaining claims—counts eleven, fourteen and sixteen.

[3] The court also dismissed counts fourteen and sixteen for failure to prosecute. There is no claim on appeal regarding those counts.

[4] *Miller* applies retroactively to cases on collateral review. *Casiano* v. *Commissioner of Correction*, 317 Conn. 52, 61–72, 115 A.3d 1031 (2015), cert. denied sub nom. *Semple* v. *Casiano*, U.S. , 136 S. Ct. 1364, 194 L. Ed. 2d 376 (2016).

[5] A juvenile offender sentenced to a term of thirty years imprisonment is now eligible for a parole hearing after serving 60 percent of the sentence, or eighteen years. See Public Acts 2015, No. 15-84, § 1 (f) (1), which is now codified as General Statutes (Supp. 2016) § 54-125a (f).

[6] See footnote 5 of this opinion.

[7] The petitioner subsequently moved this court either to strike the respondent's brief, because it advanced arguments well beyond the scope of the question presented, or to grant him the opportunity to respond. Because we decide the case on another ground, we take no action on the petitioner's motion.

We note, however, that a panel of this court was asked to address the *Montgomery* issue in *State* v. *Williams-Bey*, 167 Conn. App. 744, A.3d (2016), and *State* v. *McClean*, 167 Conn. App. 781, A.3d (2016).

[8] We see no injustice in affirming the judgment on an alternative ground rather than dismissing the appeal on the ground that we can afford no practical relief, where the parties had the opportunity to address the *Logan* issue. See, e.g., *State* v. *Brown*, 242 Conn. 389, 401, 699 A.2d 943 (1997) (court may reformulate certified question); see also *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, 311 Conn. 123, 159–64, 84 A.3d 840 (2014) (when appellant entitled to directed judgment upon prevailing on appeal, "the reviewing court may review an unpreserved, alternative ground for affirmance, or raise the issue sua sponte, only if the claim merits review under the plain error doctrine or [*State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015)], or under exceptional circumstances" such as intervening case law); *State* v. *Martin M.*, 143 Conn. App. 140, 151, 70 A.3d 135 ("[t]his court is not precluded, however, from reviewing an alternate ground that was not raised in accordance with Practice Book § 63-4 [a] [1] [A] so long as the appellant will not be prejudiced by consideration of that ground for affirmance" [internal quotation marks omitted]), cert. denied, 309 Conn. 919, 70 A.3d 41 (2013).