******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

NABEEL KADDAH *v.* COMMISSIONER OF
CORRECTION
(SC 19512)

Rogers, C. J., and Palmer, Eveleigh, McDonald and Robinson, Js.*

*Argued October 11, 2016—officially released January 31, 2017*

*Andrew P. O'Shea*, with whom was *Damon A. R. Kirschbaum*, for the appellant (petitioner).

*James A. Killen*, senior assistant state's attorney, with whom, on the brief, were *John C. Smriga*, state's attorney, and *Craig P. Nowak*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

ROBINSON, J. The sole issue in this appeal is whether Connecticut law permits a third petition for a writ of habeas corpus (third habeas) to vindicate a claim of ineffective assistance of counsel during what is commonly known as a "habeas on a habeas," namely, a second petition for a writ of habeas corpus (second habeas) challenging the performance of counsel in litigating an initial petition for a writ of habeas corpus (first habeas), which had claimed ineffective assistance of counsel at the petitioner's underlying criminal trial or on direct appeal. See *Lozada* v. *Warden*, 223 Conn. 834, 843, 613 A.2d 818 (1992). The petitioner, Nabeel Kaddah,[1] appeals[2] from the judgment of the habeas court dismissing his third habeas petition alleging, inter alia, ineffective assistance of habeas counsel during litigation of his second habeas petition. On appeal, the petitioner claims that the habeas court improperly determined that the statutory right of indigent habeas petitioners to counsel under General Statutes § 51-296 (a)[3] is limited to "effective representation by . . . first habeas counsel," thus rendering the third habeas petition challenging counsel's performance in the second habeas proceeding not cognizable as a matter of law. Given the concession by the respondent, the Commissioner of Correction (commissioner), that § 51-296 (a) provides a statutory right to assigned counsel in a second habeas proceeding that necessarily includes the right to competent counsel, we conclude that our common law authorizes a third habeas petition as a proper vehicle to vindicate that right. Accordingly, we reverse the judgment of the habeas court dismissing the counts of the third habeas petition that claimed ineffective assistance of prior habeas counsel.[4]

The record reveals the following relevant facts and procedural history. Following a jury trial, the petitioner was convicted of murder, attempted murder, and unlawful restraint in the first degree. See *State* v. *Kaddah*, 250 Conn. 563, 564, 736 A.2d 902 (1999). This court subsequently affirmed the petitioner's conviction on direct appeal. Id., 581. The petitioner, then represented by Attorney Salvatore Adamo, filed his first habeas petition alleging ineffective assistance of counsel at his trial and on direct appeal. See *Kaddah* v. *Commissioner of Correction*, 105 Conn. App. 430, 433–34, 939 A.2d 1185, cert. denied, 286 Conn. 903, 943 A.2d 1101 (2008) (*Kaddah I*). The habeas court, *White, J.*, denied the first habeas petition, along with the petitioner's petition for certification to appeal. See *Kaddah* v. *Commissioner of Correction*, 299 Conn. 129, 132, 7 A.3d 911 (2010) (*Kaddah II*). The petitioner appealed from Judge White's denial of the first habeas petition to the Appellate Court, but withdrew that appeal before that court rendered judgment. Id., 132–33.

The petitioner, represented by Attorney Joseph

Visone, then filed a second habeas petition alleging ineffective assistance of habeas counsel by Attorney Adamo in the first habeas proceeding.[5] *Kaddah I*, supra, 105 Conn. App. 434. The habeas court, *Fuger, J.*, denied this petition, along with the petitioner's petition for certification to appeal. Id. The Appellate Court subsequently dismissed the petitioner's appeal from the denial of the second habeas petition, concluding that Judge Fuger had not abused his discretion by denying the petitioner's petition for certification to appeal. Id., 446.

The petitioner later filed the third habeas petition[6] alleging, inter alia,[7] that Attorney Visone had rendered ineffective assistance during litigation of his second habeas petition by failing to raise certain claims relating to the jury instructions used at his criminal trial. After a three day habeas trial, the habeas court, sua sponte, asked the parties to brief "the question of whether the petition's allegations assert a cognizable habeas corpus claim for which this court can provide relief." See Practice Book § 23-29 (2). Specifically, the habeas court questioned whether this court's decision in *Lozada* v. *Warden*, supra, 223 Conn. 834, "which recognized the viability of a habeas corpus claim of ineffective assistance of first habeas counsel, [should] be extended ad infinitum." (Emphasis omitted.) The petitioner and the commissioner subsequently filed posttrial briefs in which they agreed that the petitioner's claim in his third habeas petition was cognizable under *Lozada*.[8] Despite the parties' agreement on this point, the habeas court nevertheless concluded that the petitioner had failed to state a cognizable claim and dismissed the remaining counts of the third habeas petition. See footnote 4 of this opinion.

In its memorandum of decision, the habeas court began its analysis with this court's decision in *Lozada* v. *Warden*, supra, 223 Conn. 834, which authorized habeas on habeas petitions, and the Appellate Court's decision in *Sinchak* v. *Commissioner of Correction*, 126 Conn. App. 684, 692, 14 A.3d 343 (2011), which held that § 51-296 (a) requires the appointment of counsel for such petitions. The habeas court declined, however, "to apply the same rubric used by the Supreme Court in *Lozada* to the [Appellate Court's] holding in *Sinchak* and conclude, therefore, because a [second habeas] petitioner has a right to appointment of habeas counsel under § 51-296 (a), that the petitioner must also have the companion right to habeas corpus relief based on the poor performance of second habeas counsel through a third habeas [proceeding]." The habeas court determined that this "syllogistic reasoning" would have the "absurd result" of fostering infinite habeas claims, which would defy "concepts of certainty, finality, and judicial economy." The habeas court determined that "it would stretch the meaning of the phrase 'arising from a criminal matter' [as used in § 51-296 (a)] beyond

all linguistic boundaries to interpret that phrase to mean 'arising from a habeas proceeding which arose from a habeas proceeding . . . which arose from a criminal matter,' ad infinitum. The more rational and plausible construction of that ambiguous phrase is that the legislature only had a first level habeas claim in mind when it created the statutory right to counsel and never intended to create a system of ineffective assistance claims in habeas cases [that] resembles the Russian Matryoshka dolls, each embraced within a more expansive one, without end." (Emphasis omitted.) Accordingly, the habeas court concluded that the petitioner's allegations did not raise a cognizable habeas corpus claim for which the court could provide relief, and rendered judgment dismissing the remaining counts of the third habeas petition. The habeas court subsequently granted the petitioner's petition for certification to appeal, and this appeal followed. See footnote 2 of this opinion.

On appeal, the petitioner, relying primarily on *Lozada* v. *Warden*, supra, 223 Conn. 834, and *Sinchak* v. *Commissioner of Correction*, supra, 126 Conn. App. 684, claims that the habeas court improperly determined that § 51-296 (a) did not afford him a right to competent counsel for his second habeas petition that could be vindicated by a third habeas petition. The petitioner argues that any other reading of the broad statutory language of § 51-296 (a), namely, "any habeas corpus proceeding arising from a criminal matter," would render the right to counsel in the second habeas proceeding illusory and foster the absurd result of allowing the appointment of incompetent counsel to represent petitioners in that proceeding. The petitioner contends that the habeas court's concern of infinite habeas on habeas petitions is addressed by existing procedures, such as dismissals under the doctrines of collateral estoppel, successive petitions, and for frivolous pleading, along with the amendments to General Statutes § 52-470[9] via the 2012 habeas reform legislation. See Public Acts 2012, No. 12-115, § 1. The petitioner further emphasizes that the legislature took no action to limit the right to counsel under § 51-296 (a) when it enacted the 2012 habeas reform measures subsequent to the Appellate Court's decision in *Sinchak*.

In response, the commissioner concedes the correctness of *Sinchak* v. *Commissioner of Correction*, supra, 126 Conn. App. 684, in which the Appellate Court held that § 51-296 (a) provides a right to counsel in a second habeas proceeding. The commissioner also acknowledges that the Appellate Court's holding in *Sinchak* necessarily encompasses the right to assistance by competent counsel in the second habeas proceeding. Retreating from the concession made before the habeas court; see footnote 8 of this opinion; the commissioner contends, however, that a claim of ineffective assistance of second habeas counsel is not a cognizable

basis for habeas relief under Connecticut law. Specifically, the commissioner argues that nothing in the text or legislative history of § 51-296 (a) indicates that the legislature intended to authorize a third habeas petition to vindicate such a right.[10] The commissioner also relies on *In re Jonathan M.*, 255 Conn. 208, 209, 764 A.2d 739 (2001), a termination of parental rights case, in support of the proposition that the existence of a right to counsel in a given situation does not mean that a habeas corpus petition is available to vindicate that right. To this end, the commissioner agrees with the finality concerns stated by the habeas court, and argues that, as a matter of the fundamental fairness that underlies the common-law habeas remedy, we should decline to permit habeas petitions raising claims of ineffective assistance beyond the second habeas petition alleging ineffective assistance because such claims are extremely difficult to prove, meaning that the utility of allowing such petitions is outweighed by the associated costs on the judicial system, including assigned counsel, victims, and witnesses. We, however, agree with the petitioner, and conclude that a third habeas petition is available as a matter of fundamental fairness to vindicate the statutory right under § 51-296 (a) to competent counsel in litigating a second habeas petition.

Whether a habeas court properly dismissed a petition pursuant to Practice Book § 23-29 (2), on the ground that it "fails to state a claim upon which habeas corpus relief can be granted," presents a question of law over which our review is plenary. See, e.g., *Zollo* v. *Commissioner of Correction*, 133 Conn. App. 266, 276–77, 35 A.3d 337, cert. granted, 304 Conn. 910, 39 A.3d 1120 (2012) (appeal dismissed May 1, 2013); accord *Kaddah II*, supra, 299 Conn. 140.

Before considering whether a third habeas petition is a cognizable remedy, we ordinarily would begin by determining the existence or scope of the statutory right to counsel at issue in the second habeas petition under § 51-296 (a). This inquiry is, however, unnecessary in this appeal because the commissioner concedes that, in *Sinchak* v. *Commissioner of Correction*, supra, 126 Conn. App. 692, the Appellate Court properly determined that, under § 51-296 (a), there is a right to counsel in a second habeas proceeding brought pursuant to *Lozada* v. *Warden*, supra, 223 Conn. 834, and that right to counsel necessarily encompasses the right to competent counsel. We exercise our discretion[11] to accept this significant concession[12] because it is consistent with our case law holding that it "would be absurd to have the right to appointed counsel who is not required to be competent," and that "§ 51-296 (a) would become an empty shell if it did not embrace the right to have the assistance of a competent attorney." Id., 838–39; see also *Gipson* v. *Commissioner of Correction*, 257 Conn. 632, 639 n.14, 778 A.2d 121 (2001) ("although the state disputes the petitioner's claim of a right to counsel

in connection with the filing of a petition for certification, the state does not dispute the principle that the right to counsel, if such right exists, includes the right to competent counsel"); *State* v. *Anonymous*, 179 Conn. 155, 160, 425 A.2d 939 (1979) (holding in termination of parental rights case that "[w]here . . . as here, a statute . . . or practice book rule . . . mandates the assistance of counsel, it is implicit that this means competent counsel" [citations omitted]). Simply put, we agree with the parties that nothing in the text of § 51-296 (a) or our state's appellate case law interpreting that provision provides any basis for the habeas court's conclusion that a petitioner has the right to counsel in a second habeas petition, but not the right to effective assistance from that attorney. Accordingly, we turn to the commissioner's contention that a third habeas petition may not be used to vindicate the right to competent counsel in prosecuting a second habeas petition.

In determining whether a third habeas petition is an available remedy to enforce the right to the effective assistance of counsel in a second habeas proceeding, we begin with *Lozada* v. *Warden*, supra, 223 Conn. 834. In *Lozada*, this court concluded that a second habeas petition is an available remedy to vindicate a claim of ineffective assistance of counsel in prosecuting a first habeas petition claiming ineffective assistance at trial or on direct appeal. Id., 843. In rejecting the respondent's argument that the writ of habeas corpus is "reserved solely for claims arising under the constitution," and is, therefore, "not available" to vindicate the statutory right to counsel in a habeas corpus proceeding under § 51-296 (a),[13] we observed that "the writ of habeas corpus is available as a remedy for a miscarriage of justice or other prejudice. . . . As this court stated in *Bunkley* v. *Commissioner of Correction*, 222 Conn. 444, 460–61, 610 A.2d 598 (1992), the principal purpose of the writ of habeas corpus is to serve as a bulwark against convictions that violate fundamental fairness. . . . This court has taken the same view. To mount a successful collateral attack on his conviction a prisoner must demonstrate a miscarriage of justice or other prejudice and not merely an error which might entitle him to relief on appeal." (Citations omitted; internal quotation marks omitted.) *Lozada* v. *Warden*, supra, 223 Conn. 839–40.

"Indeed . . . this court, in *Safford* v. *Warden*, 223 Conn. 180, 191 n.13, 612 A.2d 1161 (1992), put the issue to rest when it recognized that the great writ of liberty is not a remedy for constitutional violations exclusively, albeit most cases in which the remedy has been applied involve issues of fundamental fairness that implicate constitutional rights. Surely, fundamental fairness opens the door for relief by habeas corpus when the state, in discharging its statutory duty, appoints incompetent counsel." *Lozada* v. *Warden*, supra, 223 Conn. 840; see also *Fay* v. *Noia*, 372 U.S. 391, 400–402, 83 S.

Ct. 822, 9 L. Ed. 2d 837 (1963) (describing common-law history of "[g]eat [w]rit").

Notably, in recognizing the right to bring a second habeas petition to challenge counsel's performance in the first habeas proceeding, this court in *Lozada* also rejected the respondent's argument that "the writ [of habeas corpus] is available only to attack the validity of the underlying criminal judgment or to challenge a wrongful confinement." *Lozada* v. *Warden*, supra, 223 Conn. 841. Citing the works of Chief Justice Zephaniah Swift and William Blackstone for a historical overview of the writ as a common-law remedy, this court observed that the "writ of habeas corpus, as it is employed in the twentieth century . . . *does not focus solely upon a direct attack on the underlying judgment* or upon release from confinement." (Emphasis added.) Id. This court concluded that "the subject of the writ— that is, whether the accused had reasonably competent habeas and trial counsel—are matters that *ultimately* challenge the underlying conviction. The respondent does not question that if this were the petitioner's first habeas corpus petition, he would be entitled to challenge the competency of his trial attorney, even though the petitioner's success would lead only to a new trial. . . . Also, it is beyond dispute that the great writ may be used as a vehicle to challenge the competency of appellate counsel, even though granting the writ would likewise not result in release, but only in a new trial." (Citation omitted; emphasis added.) Id., 842.

This court emphasized, however, the petitioner's "herculean" task to prove in a second habeas, under *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), "(1) that his appointed habeas counsel was ineffective, and (2) that his trial counsel was ineffective." *Lozada* v. *Warden*, supra, 223 Conn. 842–43. We observed that the "new trial would go to the heart of the underlying conviction *to no lesser extent than if it were a challenge predicated on ineffective assistance of trial or appellate counsel*. The second habeas petition is *inextricably interwoven* with the merits of the original judgment by challenging the very fabric of the conviction that led to the confinement." (Emphasis added.) Id., 843. This court, therefore, "reject[ed] the respondent's claim that habeas corpus is not an appropriate remedy for ineffective assistance of appointed habeas counsel." Id.

The logical threads of *Lozada*, which led us to conclude that a habeas on a habeas "is inextricably interwoven with the merits of the original judgment by challenging the very fabric of the conviction that led to the confinement"; id.; seem to apply with equal force to the third habeas petition, which is brought to vindicate the petitioner's right to counsel in the second habeas petition. See *Iovieno* v. *Commissioner of Correction*, 242 Conn. 689, 702, 699 A.2d 1003 (1997) (sec-

ond habeas remedy authorized by *Lozada* "extends to ineffective assistance of counsel claims involving appellate counsel in habeas appeals" because "[t]he statutory right to counsel in habeas proceedings has also been held to extend to habeas appeals"). Given the fundamental fairness origins underlying the common-law writ of habeas corpus, it would be anomalous to conclude that a right as significant as the statutory right to counsel in a second habeas petition that ultimately challenges a criminal conviction, and the concomitant right that the attorney be competent, is one that cannot be vindicated by the writ. See *Fay* v. *Noia*, supra, 372 U.S. 401–402 ("Although in form the [g]reat [w]rit is simply a mode of procedure, its history is inextricably intertwined with the growth of fundamental rights of personal liberty. For its function has been to provide a prompt and efficacious remedy for whatever society deems to be intolerable restraints."). Given the overriding concerns of fundamental fairness that underlie the writ of habeas corpus, not allowing a third habeas petition would undermine the very nature of the statutory right provided by § 51-296 (a), which, as conceded by the commissioner, extends to a second habeas petition.[14]

We are mindful of the economic and finality concerns cited by the habeas court and the commissioner in support of the proposition that third habeas petitions should not be available to remedy claims of ineffective assistance of counsel during litigation of a second habeas petition. As in *Lozada*, we emphasize the availability of "restrictive measures" by which the courts may check abusive or frivolous habeas petitions." *Lozada* v. *Warden*, supra, 223 Conn. 845 n.11; see id. (rejecting "floodgates" argument that allowing second habeas petitions will lead to "successive and unlimited petitions for habeas corpus on the basis of ineffective assistance of habeas counsel"). Concerns of jurisprudential Matryoshka dolls aside, we tread carefully in foreclosing entirely the writ of habeas corpus in such cases because we do not occupy the entire field in state habeas corpus law, and "[a] common-law rule . . . may be subject to both legislative and judicial modification." (Internal quotation marks omitted.) *Craig* v. *Driscoll*, 262 Conn. 312, 323, 813 A.2d 1003 (2003); see also id., 323–24 (considering "whether legislature, by creating an affirmative remedy, has manifested an intention to occupy the field or whether a common-law remedy would conflict with or frustrate the purpose of the [Dram Shop Act, General Statutes § 30-102], so as to stay our hand in recognizing an action at common law" for bystander emotional distress against seller of alcoholic beverages). Although the writ of habeas corpus has a long common-law history, the legislature has enacted numerous statutes shaping its use, such as General Statutes § 52-466,[15] which governs the litigation of the writ as a civil matter. See, e.g., *Lebron* v. *Commis-*

*sioner of Correction*, 274 Conn. 507, 525–26, 876 A.2d 1178 (2005) (because "custody" requirement in § 52-466 is jurisdictional, habeas court lacked jurisdiction over challenge to fully expired conviction), overruled in part on other grounds by *State* v. *Elson*, 311 Conn. 726, 91 A.3d 862 (2014). Although we recognize that the provisions of the statutes governing habeas corpus do not control the outcome in this case, "it is well established that statutes are a useful source of policy for common-law adjudication, particularly when there is a close relationship between the statutory and common-law subject matters. . . . Statutes are now central to the law in the courts, and judicial lawmaking must take statutes into account virtually all of the time . . . ." (Citations omitted; internal quotation marks omitted.) *C & J Builders & Remodelers, LLC* v. *Geisenheimer*, 249 Conn. 415, 419–20, 733 A.2d 193 (1999); see, e.g., *Hopkins* v. *O'Connor*, 282 Conn. 821, 844–45, 925 A.2d 1030 (2007) (relying on criminal penalty in General Statutes § 17a-504 for wrongful acts in connection with psychiatric commitment to conclude that common law provided police officer with qualified, rather than absolute, civil immunity); *State* v. *Guess*, 244 Conn. 761, 780, 715 A.2d 643 (1998) (considering statutory definition of death under Uniform Determination of Death Act, General Statutes § 19a-504a, in modifying common law for purposes of Penal Code, which did not define term "death").

Given the statutory overlay with respect to the common law governing the writ of habeas corpus, we find it significant that the legislature recently engaged in comprehensive habeas reform, culminating in the 2012 amendments to § 52-470[16] that are intended to supplement that statute's efficacy in averting frivolous habeas petitions and appeals. See Public Acts 2012, No. 12-115, § 1. It is well established that we presume the legislature's awareness of the common and statutory law governing the fields in which it acts. See, e.g., *Financial Consulting, LLC* v. *Commissioner of Insurance*, 315 Conn. 196, 212, 105 A.3d 210 (2014). We are especially confident as to this awareness with respect to habeas law in particular, as the legislature adopted the 2012 habeas reforms just a few months after the Appellate Court's decision in *Sinchak* v. *Commissioner of Correction*, supra, 126 Conn. App. 684, and the reforms were the product of collaboration and compromise by representatives from the various stakeholders in the habeas process, including the Division of Criminal Justice, the Office of the Chief Public Defender, the criminal defense bar, and the Judicial Branch. See, e.g., Division of Criminal Justice, Request for Joint Favorable Report on House Bill 5554 (March 29, 2012), available at https://www.cga.ct.gov/2012/JUDdata/Tmy/2012HB-05554-R000329-Division%20of%20Criminal%20Justice-TMY.PDF (last visited January 13, 2017). Notably, the 2012 habeas reform did not limit the right to

counsel under § 51-296 (a) or otherwise render habeas relief unavailable in broad categories of cases, including multiple petitions testing the effectiveness of prior habeas counsel. Quite the opposite, § 52-470 (d), as amended in 2012, specifically recognizes the possibility of multiple petitions challenging a single conviction. See General Statutes § 52-470 (d) ("[i]n the case of a petition filed subsequent to a judgment on a prior petition challenging the same conviction, there shall be a rebuttable presumption that the filing of the subsequent petition has been delayed without good cause if such petition is filed after the later of the following: [1] [t]wo years after the date on which the judgment in the prior petition is deemed to be a final judgment"). Thus, given recent legislative activity in the field with no indication that the General Assembly intended to eliminate the use of the common-law habeas corpus remedy to vindicate the statutory right under § 51-296 (a) to the effective assistance of counsel in a second habeas, we stay our hand as a matter of common law with respect to disturbing the availability of that remedy. Cf. *Stuart* v. *Stuart*, 297 Conn. 26, 47, 996 A.2d 259 (2010) (discussing particular applicability of doctrine of legislative acquiescence when "legislature affirmatively amended the statute subsequent to a judicial or administrative interpretation, but chose not to amend the specific provision of the statute at issue" [internal quotation marks omitted]). Should the legislature determine that existing "restrictive measures"; *Lozada* v. *Warden*, supra, 223 Conn. 845 n.11; already in place to address frivolous habeas petitions, such as summary dismissal without a trial under § 52-470 (b) or *Anders* briefs[17] filed by habeas counsel, are insufficient to stem the tide of third habeas petitions challenging the first two layers of habeas representation, the legislature remains free to amend the relevant statutes as necessary.[18] Cf. *In re Jonathan M.*, supra, 255 Conn. 240–41 (concluding that habeas corpus petition not available remedy to challenge termination of parental rights because "permitting a habeas writ as a vehicle in which a parent whose rights have been terminated may attack that judgment collaterally, unbounded by constraints within which time such a petition may be filed, would further undermine the legislative pronouncements in this area of the law," namely, General Statutes § 45a-719, which "preclud[es] the court from granting any motion or petition filed after a final decree of adoption has been entered").

We conclude, therefore, that a third habeas petition is an available remedy to challenge the effectiveness of the petitioner's counsel in the second habeas proceeding.[19] Accordingly, the habeas court improperly dismissed the third and sixth counts of the third petition; see footnote 4 of this opinion; on the ground that they failed to state a claim for which habeas relief was available.[20]

The judgment is reversed only with respect to the

dismissal of counts three and six of the amended petition and the case is remanded for further proceedings according to law.

In this opinion the other justices concurred.

* This case was originally argued before a panel of this court consisting of Chief Justice Rogers and Justices Palmer, Zarella, Eveleigh, McDonald and Robinson. Thereafter, Justice Zarella retired from this court and did not participate in the consideration of the case.

[1] We note that the petitioner's first name has been spelled "Nabil" in other appellate opinions. See generally *Kaddah* v. *Commissioner of Correction*, 299 Conn. 129, 130, 7 A.3d 911 (2010); *State* v. *Kaddah*, 250 Conn. 563, 564, 736 A.2d 902 (1999); *Kaddah* v. *Commissioner of Correction*, 105 Conn. App. 430, 431, 939 A.2d 1185, cert. denied, 286 Conn. 903, 943 A.2d 1101 (2008). In the present case, however, we use the spelling "Nabeel" for the sake of consistency with the original pleadings.

[2] The habeas court granted the petitioner's petition for certification to appeal. See General Statutes § 52-470 (g). The petitioner subsequently appealed from the judgment of the habeas court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-2.

[3] General Statutes § 51-296 (a) provides in relevant part: "In any criminal action, in any habeas corpus proceeding arising from a criminal matter . . . the court before which the matter is pending shall, if it determines after investigation by the public defender or his office that a defendant is indigent as defined under this chapter, designate a public defender, assistant public defender or deputy assistant public defender to represent such indigent defendant . . . ."

[4] We note that the operative pleading with respect to the third habeas petition includes six counts claiming ineffective assistance of counsel in connection with the criminal trial, the direct appeal, and his two prior habeas petitions. On the first day of trial, the habeas court, acting sua sponte, dismissed counts one, two, four, and five of the amended petition, which alleged ineffective assistance of counsel in connection with the criminal trial and the direct appeal, but did not pertain to prior habeas counsel. The petitioner does not challenge the dismissal of these counts in this appeal.

[5] The petitioner also filed a series of unsuccessful habeas petitions in federal court, prior to exhausting his state habeas remedies. See *Kaddah* v. *Brighthaupt*, United States District Court, Docket No. 3:11CV1809 (SRU) (D. Conn. August 6, 2013); *Kaddah* v. *Lee*, United States District Court, Docket No. 3:08CV519 (SRU) (D. Conn. October 7, 2008); *Kaddah* v. *Strange*, United States District Court, Docket No. 3:00CV1642 (CFD) (D. Conn. January 18, 2001). The disposition of these federal petitions does not affect our analysis in this appeal.

[6] We note that, prior to filing the petition at issue in the present case, the petitioner filed a habeas petition as a self-represented party alleging ineffective assistance of his trial counsel in order to reinstate his previously withdrawn appeal. The habeas court, *Nazzaro, J.*, summarily dismissed this petition as successive to the first habeas petition. See *Kaddah II*, supra, 299 Conn. 134–35. This court affirmed Judge Nazzaro's decision on the alternative ground that the petition did not state a claim on which the requested relief could be granted because it failed to challenge Attorney Visone's decision to withdraw the first habeas appeal. See id., 139–40. The claims raised in that proceeding are not, however, relevant to the present appeal. Consequently, for the sake of simplicity, we refer to the petition at issue in the present case as his third habeas petition.

[7] See footnote 4 of this opinion.

[8] Specifically, the commissioner's brief to the habeas court stated: "[The] [p]etitioner's prior habeas attorneys were appointed pursuant to . . . § 51-296. Accordingly, he possessed a right to effective assistance of both habeas attorneys; a right he is claiming was violated in this pending habeas corpus action. Therefore, he may claim that his second appointed habeas counsel was ineffective. This analysis raises the question, can a petitioner bring habeas on a habeas ad infinitum? As long as a petitioner is provided counsel pursuant to . . . § 51-296, he is entitled to effective assistance of counsel. Accordingly, he may challenge that appointed habeas attorney's representation at a subsequent habeas [proceeding]."

[9] General Statutes § 52-470 provides: "(a) The court or judge hearing any habeas corpus shall proceed in a summary way to determine the facts and issues of the case, by hearing the testimony and arguments in the case, and

shall inquire fully into the cause of imprisonment and thereupon dispose of the case as law and justice require.

"(b) (1) After the close of all pleadings in a habeas corpus proceeding, the court, upon the motion of any party or, on its own motion upon notice to the parties, shall determine whether there is good cause for trial for all or part of the petition.

"(2) With respect to the determination of such good cause, each party may submit exhibits including, but not limited to, documentary evidence, affidavits and unsworn statements. Upon the motion of any party and a finding by the court that such party would be prejudiced by the disclosure of the exhibits at that stage of the proceedings, the court may consider some or all of the exhibits in camera.

"(3) In order to establish such good cause, the petition and exhibits must (A) allege the existence of specific facts which, if proven, would entitle the petitioner to relief under applicable law, and (B) provide a factual basis upon which the court can conclude that evidence in support of the alleged facts exists and will be presented at trial, provided the court makes no finding that such evidence is contradicted by judicially noticeable facts. If the petition and exhibits do not establish such good cause, the court shall hold a preliminary hearing to determine whether such good cause exists. If, after considering any evidence or argument by the parties at such preliminary hearing, the court finds there is not good cause for trial, the court shall dismiss all or part of the petition, as applicable.

"(c) Except as provided in subsection (d) of this section, there shall be a rebuttable presumption that the filing of a petition challenging a judgment of conviction has been delayed without good cause if such petition is filed after the later of the following: (1) Five years after the date on which the judgment of conviction is deemed to be a final judgment due to the conclusion of appellate review or the expiration of the time for seeking such review; (2) October 1, 2017; or (3) two years after the date on which the constitutional or statutory right asserted in the petition was initially recognized and made retroactive pursuant to a decision of the Supreme Court or Appellate Court of this state or the Supreme Court of the United States or by the enactment of any public or special act. The time periods set forth in this subsection shall not be tolled during the pendency of any other petition challenging the same conviction.

"(d) In the case of a petition filed subsequent to a judgment on a prior petition challenging the same conviction, there shall be a rebuttable presumption that the filing of the subsequent petition has been delayed without good cause if such petition is filed after the later of the following: (1) Two years after the date on which the judgment in the prior petition is deemed to be a final judgment due to the conclusion of appellate review or the expiration of the time for seeking such review; (2) October 1, 2014; or (3) two years after the date on which the constitutional or statutory right asserted in the petition was initially recognized and made retroactive pursuant to a decision of the Supreme Court or Appellate Court of this state or the Supreme Court of the United States or by the enactment of any public or special act. For the purposes of this section, the withdrawal of a prior petition challenging the same conviction shall not constitute a judgment. The time periods set forth in this subsection shall not be tolled during the pendency of any other petition challenging the same conviction. Nothing in this subsection shall create or enlarge the right of the petitioner to file a subsequent petition under applicable law.

"(e) In a case in which the rebuttable presumption of delay under subsection (c) or (d) of this section applies, the court, upon the request of the respondent, shall issue an order to show cause why the petition should be permitted to proceed. The petitioner or, if applicable, the petitioner's counsel, shall have a meaningful opportunity to investigate the basis for the delay and respond to the order. If, after such opportunity, the court finds that the petitioner has not demonstrated good cause for the delay, the court shall dismiss the petition. For the purposes of this subsection, good cause includes, but is not limited to, the discovery of new evidence which materially affects the merits of the case and which could not have been discovered by the exercise of due diligence in time to meet the requirements of subsection (c) or (d) of this section.

"(f) Subsections (b) to (e), inclusive, of this section shall not apply to (1) a claim asserting actual innocence, (2) a petition filed to challenge the conditions of confinement, or (3) a petition filed to challenge a conviction for a capital felony for which a sentence of death is imposed under section 53a-46a.

"(g) No appeal from the judgment rendered in a habeas corpus proceeding brought by or on behalf of a person who has been convicted of a crime in order to obtain such person's release may be taken unless the appellant, within ten days after the case is decided, petitions the judge before whom the case was tried or, if such judge is unavailable, a judge of the Superior Court designated by the Chief Court Administrator, to certify that a question is involved in the decision which ought to be reviewed by the court having jurisdiction and the judge so certifies."

[10] Given the commissioner's concessions before the habeas court, his arguments in this appeal are, in essence, unpreserved alternative grounds for affirming that court's judgment. We exercise our discretion to consider these unpreserved arguments because: (1) the petitioner has not objected and has had full opportunity to respond in his reply brief; and (2) judicial economy counsels in favor of reviewing them insofar as granting the petitioner relief in this appeal will entail further proceedings before the habeas court. See *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, 311 Conn. 123, 166, 84 A.3d 840 (2014); *Dumas* v. *Commissioner of Correction*, 168 Conn. App. 130, 140 n.8, 145 A.3d 355 (2016).

[11] We emphasize that a party's concession as to a point of law is not binding on this court. See, e.g., *State* v. *Warholic*, 278 Conn. 354, 373 n.11, 897 A.2d 569 (2006); *State* v. *Avery*, 199 Conn. 377, 379 n.2, 507 A.2d 464 (1986).

[12] This concession is significant because, if there is no right to competent counsel in a second habeas, then there is no need for us to consider the remedies available to vindicate that right.

[13] It is well settled that there is no federal constitutional right to counsel in a habeas corpus proceeding. See, e.g., *Lozada* v. *Warden*, supra, 223 Conn. 839 n.8; see also *Pennsylvania* v. *Finley*, 481 U.S. 551, 555, 107 S. Ct. 1990, 95 L. Ed. 2d 539 (1987) (no federal constitutional right to counsel in collateral review proceedings).

[14] We acknowledge the commissioner's argument that *Lozada* v. *Warden*, supra, 223 Conn. 834, properly allows a second habeas petition for review of counsel's actions in the first habeas proceeding, albeit not as a matter of vindicating the statutory right to counsel under § 51-296 (a), but rather, as a matter of "fundamental fairness" to assure that a criminal defendant has two opportunities to vindicate his constitutional right to counsel at trial and on direct appeal under the sixth amendment to the United States constitution. Specifically, the commissioner notes our well established practice of deferring review of ineffectiveness claims from the original criminal proceedings, including direct appeal, to collateral review by habeas corpus in order to allow for necessary record development. See, e.g., *State* v. *Leecan*, 198 Conn. 517, 542, 504 A.2d 480, cert. denied, 476 U.S. 1184, 106 S. Ct. 2922, 91 L. Ed. 2d 550 (1986). The commissioner posits that, in the absence of this procedure, a criminal defendant would ordinarily be able to raise ineffective assistance claims under the sixth amendment for review pursuant to *Strickland* v. *Washington*, supra, 466 U.S. 687, at the criminal trial and on direct appeal, with review by a subsequent habeas proceeding. The commissioner argues that our reticence to review ineffective assistance claims in direct proceedings necessitates a second habeas petition to assure that criminal defendants in Connecticut get the same pair of opportunities for review of a possible deprivation of their constitutional right to counsel.

We agree with the general doctrinal framework posited by the commissioner, namely, that "fundamental fairness" dictates the availability of the writ of habeas corpus as a matter of common law; see *Safford* v. *Warden*, supra, 223 Conn. 190; meaning that, as we held in *Lozada* v. *Warden*, supra, 223 Conn. 839–40, it may well be available to remedy statutory as well as constitutional violations. Our decision in *Lozada* is consistent with the commissioner's arguments because, in that case, we treated the question of whether the statutory right to counsel under § 51-296 (a) includes a component of competence as a separate inquiry from whether a habeas petition is a proper remedy for vindicating that right. See Id., 840–43. Put differently, nowhere in *Lozada* did we treat the right to bring a second habeas petition as one with its doctrinal roots in the right provided by § 51-296 (a). Although we recognize that there has been substantial legislative involvement in the area of habeas corpus, culminating in a recent set of reforms in 2012; see Public Acts 2012, No. 12-115, § 1; we emphasize that, in the absence of a statute curtailing the common-law right to the writ, any modifications that we make to its availability to vindicate legal rights are a function of our ultimate authority over the state's common law. See, e.g., *State* v. *DeJesus*, 288 Conn. 418, 456–57, 953 A.2d 45 (2008).

[15] General Statutes § 52-466 provides in relevant part: "(a) (1) An applica-

tion for a writ of habeas corpus, other than an application pursuant to subdivision (2) of this subsection, shall be made to the superior court, or to a judge thereof, for the judicial district in which the person whose custody is in question is claimed to be illegally confined or deprived of such person's liberty.

"(2) An application for a writ of habeas corpus claiming illegal confinement or deprivation of liberty, made by or on behalf of an inmate or prisoner confined in a correctional facility as a result of a conviction of a crime, shall be made to the superior court, or to a judge thereof, for the judicial district of Tolland.

"(b) The application shall be verified by the affidavit of the applicant for the writ alleging that he truly believes that the person on whose account the writ is sought is illegally confined or deprived of his liberty.

"(c) The writ shall be directed to some proper officer to serve and return, who shall serve the same by putting a true and attested copy of it into the hands of the person who has the custody of the body of the person who is directed to be presented upon the writ. If the officer fails to make immediate return of the writ, with his actions thereon, he shall pay fifty dollars to the person so held in custody. . . ."

[16] See footnote 9 of this opinion for the full text of § 52-470.

[17] *Anders* v. *California*, 386 U.S. 738, 744–45, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967); see, e.g., *Lorthe* v. *Commissioner of Correction*, 103 Conn. App. 662, 676, 931 A.2d 348 (discussing filing of briefs by appointed counsel, pursuant to *Anders*, to inform court that habeas petition or appeal is "wholly frivolous"), cert. denied, 284 Conn. 939, 937 A.2d 696 (2007); see also Practice Book § 23-41 (governing motions to withdraw by appointed counsel in habeas cases).

[18] We briefly discuss *In re Jonathan M.*, supra, 255 Conn. 208, on which the commissioner relies heavily in support of barring the use of a third habeas petition to vindicate the petitioner's right to the effective assistance of counsel in prosecuting a second habeas petition. In that case, this court held that due process, implemented by the three factor balancing test of *Mathews* v. *Eldridge*, 424 U.S. 319, 334–35, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976), did not require "the writ of habeas corpus as a procedural means of vindicating the right to effective assistance of counsel in an action to terminate parental rights." *In re Jonathan M.*, supra, 229. Acknowledging the grave constitutional significance of the parent-child relationship, we emphasized the state's interest in the rapid resolution of termination litigation because of the best interests of the subject child, namely, assuring that the child received a permanent home as soon as possible. Id., 230–32. We observed that, "to allow a habeas action to raise an ineffective assistance of counsel claim, as in this case, necessarily would suspend adoption proceedings and infuse uncertainty therein. Due to the fact that a habeas petition may be filed at any time . . . there exists . . . a frightening possibility that a habeas petition will negate the permanent placement of a child whose status had presumably been in limbo for several years." (Citation omitted; internal quotation marks omitted.) Id., 232–33. We then determined that existing remedies were sufficient to protect parental interests, including the heightened "vigilance" of trial judges in termination proceedings, direct appeal from the judgment of termination, rules of practice providing review by an independent attorney in the event of a withdrawal by counsel, statutory and common-law motions to open the judgment, and a petition for a new trial within three years pursuant to General Statutes § 52-582. See id., 234–40. Finally, we emphasized that General Statutes § 45a-719 demonstrated the legislature's concern with finality by "precluding the court from granting any motion or petition filed after a final decree of adoption has been entered." Id., 240; see also id., 240–41 ("permitting a habeas writ as a vehicle in which a parent whose rights have been terminated may attack that judgment collaterally, unbounded by constraints within which time such a petition may be filed, would further undermine the legislative pronouncements in this area of the law"). Thus, we declined "to infect the delicate and serious process governing the placement of foster children in permanent adoptive homes with perpetual uncertainty where the General Assembly has not directed us to do so." Id., 241.

We decline the commissioner's invitation to follow *In re Jonathan M.* because the finality considerations in a collateral challenge to a termination of parental rights are drastically different from those presented by a writ of habeas corpus attacking a criminal conviction with respect to the fundamental fairness concerns that drive the availability of the writ as a common-law remedy. "[C]riminal prosecutions and termination proceedings are sub-

stantially different in focus. The resolution of a civil juvenile proceeding focuses on the best interests of the child, not on guilt or innocence as in a criminal proceeding." *Baker* v. *Office of Family & Children*, 810 N.E.2d 1035, 1039 (Ind. 2004). In relying on *In re Jonathan M.* in a termination of parental rights case, the Indiana Supreme Court drew a sharp distinction between "serial [litigation] in criminal cases," with its attendant burdens on the state, potential victims, and witnesses, "by saying that the complete deprivation of personal liberty represented by incarceration demands a thorough search for the innocent. In the context of termination cases, extended litigation imposes that burden on the most vulnerable people whom the system and such cases seek to protect: the children." Id., 1040. Thus, we view *In re Jonathan M.* as embodying very different interests of finality than those presented in a habeas petition that ultimately challenges a criminal conviction. This is particularly so given our reliance in that case on the absolute finality that the legislature imposed in termination cases by § 45a-719. See *In re Jonathan M.*, supra, 255 Conn. 240. Indeed, the commissioner has not pointed us to a similar statutory bright line barring further relief in the criminal habeas context, and our independent research has not revealed one.

[19] We emphasize, however, that our holdings in this case are limited to the questions decided by the habeas court, and briefed and argued by the parties, namely: (1) whether there is, as conceded by the commissioner, a statutory right under § 51-296 (a) to the effective assistance of counsel in prosecuting a second habeas petition; and (2) if such a right exists, whether a third habeas petition is an available procedural vehicle by which to vindicate that right. Given the concerns of "fundamental fairness" that attend the use of the habeas remedy; see, e.g., *Safford* v. *Warden*, supra, 223 Conn. 190; along with the practical and economic concerns aptly noted by the habeas court in the present case, we take no position in this appeal about whether the writ is available to remedy claims of ineffective assistance of counsel during litigation of the third habeas petition and beyond. We similarly decline to opine, as a matter of statutory interpretation, about whether the statutory right to counsel under § 51-296 (a) extends beyond the second habeas petition. See, e.g., *Stuart* v. *Stuart*, supra, 297 Conn. 48 ("sound principles of judicial restraint and judicial economy counsel [an appellate court] to resolve only those issues that are necessary to the proper determination of [an] appeal" [internal quotation marks omitted]); see also *Simms* v. *Warden*, 229 Conn. 178, 190, 640 A.2d 601 (1994) (*Borden, J.*, concurring) ("Experience has demonstrated that we are wiser to defer difficult questions to cases that squarely present them. I would follow that wisdom and defer the question to a case in which the issue is squarely presented and briefed.").

[20] Observing that "the issue may arise again" on remand, the petitioner asks us to "address the available remedies for his claim of ineffective assistance of second habeas counsel," given the habeas court's conclusion that "the only remedy possible for this claim is the granting of a new second habeas trial." Citing *Lapointe* v. *Commissioner of Correction*, 316 Conn. 225, 229, 112 A.3d 1 (2015), in which this court upheld the Appellate Court's order of a new criminal trial in connection with a second habeas petition, the petitioner observes that "the issues raised at a second habeas go to the heart of the underlying criminal proceeding, [and] it is within the broad scope of a habeas court's authority in crafting equitable relief to not only grant a new second habeas trial, but also to grant a new criminal trial." Although we often address issues that are likely to arise on remand; see, e.g., *Total Recycling Services of Connecticut, Inc.* v. *Connecticut Oil Recycling Services, LLC*, 308 Conn. 312, 325, 63 A.3d 896 (2013); given the habeas court's broad discretion with respect to the available remedies, we decline to address this claim in the absence of factual findings and conclusions of law with respect to the specific claims of ineffectiveness in the preceding habeas proceedings and underlying criminal trial that might better inform our remedial analysis. See *Gaines* v. *Manson*, 194 Conn. 510, 528, 481 A.2d 1084 (1984) (observing that habeas court, "much like a court of equity, has considerable discretion to frame a remedy, so long as that remedy is commensurate with the scope of the constitutional violations which have been established").