******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* JOSE RIVERA
(AC 40218)

DiPentima, C. J., and Mullins and Pellegrino, Js.

*Syllabus*

The defendant, who previously had been convicted of, inter alia, the crime
of murder and sentenced to a mandatory minimum term of twenty-five
years of incarceration without the possibility of parole stemming from
his role in a shooting when he was seventeen years old, appealed to
this court, claiming that the trial court improperly dismissed his motion
to correct an illegal sentence for lack of subject matter jurisdiction. The
defendant claimed that his sentence was unconstitutional under the
eighth amendment to the United States constitution, as interpreted by
*Miller* v. *Alabama* (567 U.S. 460), which requires a sentencing court to
consider a juvenile offender's youth and attendant characteristics as
mitigating factors prior to sentencing a juvenile homicide offender to
life without the possibility of parole or its functional equivalent. He also
claimed that his mandatory minimum sentence of twenty-five years
violated article first, §§ 8 and 9, of the state constitution, in that it
prevented the court from sentencing a juvenile on a charge of murder
to less than twenty-five years of incarceration upon due consideration
to the factors outlined in *Miller*. During the pendency of the defendant's
appeal, No. 15-84, § 1, of the 2015 Public Acts (P.A. 15-84, now codified
at § 54-125a [f]) was enacted, pursuant to which the defendant became
eligible for parole. Also, after this appeal was filed, our Supreme Court
decided *State* v. *Delgado* (323 Conn. 801), in which it held that the eighth
amendment to the United States constitution, as interpreted by *Miller*,
does not prohibit a court from imposing a sentence of life imprisonment
with the opportunity for parole for a juvenile homicide offender, or
require the court to consider the mitigating factors of youth before
imposing such a sentence, and that an allegation that the court failed
to consider youth related factors before imposing a sentence of life with
parole was not sufficient to establish a jurisdictional basis for correcting
a sentence. *Held*:

1. The trial court properly dismissed the defendant's motion to correct an
   illegal sentence for lack of subject matter jurisdiction; although the
   defendant initially was sentenced as a juvenile to twenty-five years of
   incarceration without the possibility of parole for a homicide offense,
   he is now eligible for parole pursuant to § 54-125a (f), and, therefore,
   pursuant to *Delgado*, because the sentencing court was not required to
   consider the mitigating factors of youth before imposing such a sentence,
   the defendant's motion to correct failed to state a colorable claim that
   his sentence of twenty-five years of incarceration was illegal or imposed
   in an illegal manner, and the trial court lacked subject matter jurisdiction
   to consider the merits of the motion to correct.

2. The defendant could not prevail on his claim that a mandatory minimum
   sentence of twenty-five years of incarceration without the possibility
   of parole imposed on a juvenile homicide offender was unconstitutional
   under article first, §§ 8 and 9, of our state constitution, as the factors
   set forth in *State* v. *Geisler* (222 Conn. 672) to be considered in defining
   the scope and parameters of the state constitution did not support the
   defendant's state constitutional claim: the mandatory minimum sentence
   of twenty-five years of incarceration imposed on a juvenile offender did
   not constitute cruel and unusual punishment under federal precedent,
   as it was not excessive and disproportionate or arbitrary or discrimina-
   tory, the sentencing court was not required to consider the youth related
   mitigating factors under *Miller*, as those factors apply only to life senten-
   ces without the possibility of parole or their functional equivalent and
   the defendant was eligible for parole, the historical considerations under-
   lying this state's constitutional history provided no direction in determin-
   ing whether the defendant's sentence was prohibited under article first,
   §§ 8 and 9, of the state constitution, the text of which did not give
   juveniles any specific special status or protections, recent decisions by
   this state's appellate courts weighed against the defendant's claim, as

did persuasive precedent from our sister states, and § 54-125a (f), which confers special protection on juveniles who were under the age of eighteen at the time they committed their offenses, reflects current sociological and economic norms as to youth related sentencing considerations, which also weighed against the defendant; accordingly, the mandatory minimum sentence of twenty-five years of incarceration imposed on the defendant, as a juvenile homicide offender, did not violate the state constitution.

3. This court declined to reach the merits of the defendant's unpreserved claim that the trial court committed constitutional error when it improperly accepted his waiver, through counsel, of his right to a presentence investigation report without canvassing him prior to permitting the waiver, this court having previously concluded that review of an unpreserved claim pursuant to *State* v. *Golding* (213 Conn. 233) is not warranted where, as here, the defendant, on appeal, raises a challenge to the legality of his sentence that was not presented in his underlying motion to correct an illegal sentence.

Argued May 15—officially released October 17, 2017

*Procedural History*

Substitute information charging the defendant with the crimes of murder and conspiracy to commit murder, brought to the Superior Court in the judicial district of Hartford, where the defendant was presented to the court, *Clifford, J.*, on a plea of guilty; judgment of guilty; thereafter, the court, *Alexander, J.*, dismissed the defendant's motion to correct an illegal sentence, and the defendant appealed to this court. *Affirmed.*

*W. Theodore Koch III*, assigned counsel, for the appellant (defendant).

*Michele C. Lukban*, senior assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, *Melissa E. Patterson*, assistant state's attorney, and *Thomas R. Garcia*, former senior assistant state's attorney, for the appellee (state).

*Opinion*

DiPENTIMA, C. J. The defendant, Jose Rivera, appeals from the judgment of the trial court dismissing his motion to correct an illegal sentence. We are asked to determine whether our state constitution affords greater protection to juvenile homicide offenders than that provided under the federal constitution. On appeal, the defendant claims that (1) the court erred in dismissing the motion to correct an illegal sentence on the ground that it lacked subject matter jurisdiction, (2) the court erred in dismissing the motion to correct an illegal sentence because the mandatory minimum sentence of twenty-five years of incarceration without the possibility of parole imposed on a juvenile homicide offender is unconstitutional under article first, §§ 8 and 9, of the Connecticut constitution, as it prevented the court from sentencing juveniles to less than twenty-five years of incarceration upon due consideration of the *Miller* factors[1] and (3) the court committed constitutional error when it accepted the defendant's waiver, through counsel, without a canvass, of his right to a presentence investigation report. We disagree with the defendant and, accordingly, affirm the judgment of the trial court dismissing the motion to correct an illegal sentence.

The following facts and procedural history are relevant to the present appeal. On April 5, 1997, the defendant and an accomplice participated in a shooting that resulted in the death of Harry Morales. The defendant was seventeen years old at the time of the shooting.

On June 3, 1999, when the defendant was nineteen years old, he pleaded guilty to murder in violation of General Statutes § 53a-54a and conspiracy to commit murder in violation of General Statutes §§ 53a-48 (a) and 53a-54a. He also pleaded guilty under a different docket number to assault in the first degree in violation of General Statutes § 53a-59 (a) (1).[2] The court, *Clifford, J.*, sentenced the defendant to the mandatory minimum of twenty-five years of incarceration on the charge of murder, twenty years of incarceration on the charge of conspiracy to commit murder and ten years of incarceration, five of which were the mandatory minimum, on the charge of assault in the first degree, with all sentences to be served concurrently. The total effective sentence imposed by the court was twenty-five years of incarceration. At the time the defendant was sentenced, he was not eligible for parole pursuant to General Statutes § 54-125a (b) (1), which provides in relevant part that "[n]o person convicted of [murder], which was committed on or after July 1, 1981, shall be eligible for parole . . . ."[3]

On October 1, 2014, the defendant filed a motion to correct an illegal sentence pursuant to Practice Book § 43-22.[4] In his motion, the defendant claimed that his

sentence of twenty-five years of incarceration was imposed in an illegal manner because it violated the eighth amendment to the United States constitution as interpreted by *Miller* v. *Alabama*, 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012),[5] and *Graham* v. *Florida*, 560 U.S. 48, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010).[6] Oral argument was heard on October 16, 2014.

On February 11, 2015, the trial court, *Alexander, J.*, issued a memorandum of decision dismissing the defendant's motion to correct an illegal sentence because it lacked subject matter jurisdiction over the motion. This appeal followed.

After the appeal was filed and briefed, our Supreme Court issued decisions in *State* v. *Delgado*, 323 Conn. 801, 151 A.3d 345 (2016), and *State* v. *Boyd*, 323 Conn. 816, 151 A.3d 355 (2016). The parties were asked to be prepared to address at oral argument the impact of *Delgado* and *Boyd* on the present appeal.[7]

I

The defendant first claims that the trial court erred in dismissing the motion to correct an illegal sentence on the ground that it lacked subject matter jurisdiction. We conclude that our Supreme Court's holding in *State* v. *Delgado*, supra, 323 Conn. 801, is dispositive of the defendant's claim, and, accordingly, we agree with the trial court's dismissal of the defendant's motion to correct.

We begin by setting forth our well established standard of review and legal principles that govern our resolution of this claim. "We apply plenary review in addressing this question of law. . . . The subject matter jurisdiction requirement may not be waived by any party, and also may be raised by a party, or by the court sua sponte, at any stage of the proceedings, including on appeal. . . . At issue is whether the defendant has raised a colorable claim within the scope of Practice Book § 43-22 that would, if the merits of the claim were reached and decided in the defendant's favor, require correction of a sentence. . . . In the absence of a colorable claim requiring correction, the trial court has no jurisdiction to modify the sentence." (Citations omitted; internal quotation marks omitted.) Id., 810.

In *Delgado*, the defendant, who was sentenced in 1996 to sixty-five years of incarceration without the possibility of parole for crimes he committed at the age of sixteen, appealed from the judgment of the trial court dismissing his motion to correct an illegal sentence. The issue before the Supreme Court was whether the sentencing court had failed to consider youth related mitigating factors and imposed the equivalent of a life sentence without the possibility of parole in violation of the eighth amendment. Id., 802–804, 809. Our Supreme Court first noted that "[f]ollowing the enactment of No. 15-84 of the 2015 Public Acts (P.A. 15-84), now codified

in part in General Statutes § 54-125a (f) . . . the defendant is now eligible for parole and can no longer claim that he is serving a sentence of life imprisonment, or its equivalent, without parole."[8] *State* v. *Delgado*, supra, 323 Conn. 810.

The court next explained that "[t]he eighth amendment [to the United States constitution], as interpreted by *Miller*, does not prohibit a court from imposing a sentence of life imprisonment with the opportunity for parole for a juvenile homicide offender, nor does it require the court to consider the mitigating factors of youth before imposing such a sentence. . . . Rather, under *Miller*, a sentencing court's obligation to consider youth related mitigating factors is limited to cases in which the court imposes a sentence of life, or its equivalent, *without* parole." (Citation omitted; emphasis altered.) Id., 810–11. The court went on to state that "[b]ecause *Miller* and [*State* v. *Riley*, 315 Conn. 637, 110 A.3d 1205 (2015), cert. denied,    U.S.    , 136 S. Ct. 1361, 194 L. Ed. 2d 376 (2016)], do not require a trial court to consider any particular mitigating factors associated with a juvenile's young age before imposing a sentence that includes an opportunity for parole, the defendant can no longer allege, after the passage of P.A. 15-84, that his sentence was imposed in an illegal manner on the ground that the trial court failed to take these factors into account. Such an allegation is an essential predicate to the trial court's jurisdiction to correct the sentence. An allegation that the court failed to consider youth related factors before imposing a sentence of life *with parole* is not sufficient to establish a jurisdictional basis for correcting a sentence. . . . We therefore conclude that the defendant has not raised a colorable claim of invalidity that, if decided in his favor, would require resentencing." (Citations omitted; emphasis in original.) Id., 812–13.

As in *Delgado*, although the defendant here initially was sentenced as a juvenile to twenty-five years of incarceration without the possibility of parole for a homicide offense, he is now eligible for parole pursuant to § 54-125a (f). As explained in *Delgado*, the sentencing court was not required to consider the mitigating factors of youth before imposing such a sentence. Because the defendant's motion to correct fails to state a colorable claim that his sentence of twenty-five years of incarceration was illegal or imposed in an illegal manner, the trial court does not have subject matter jurisdiction to consider the merits of the motion. See *State* v. *McClean*, 173 Conn. App. 62, 64, 164 A.3d 35 (2017) (concluding: "[u]pon reconsideration, we are constrained by *Delgado* to conclude that the trial court properly dismissed the defendant's motion to correct an illegal sentence and that its judgment should be affirmed"); *State* v. *Martin*, 172 Conn. App. 904, 158 A.3d 448 (2017) (same); see also *State* v. *Parker*, 173 Conn. App. 901, 159 A.3d 1203 (2017) (same). The court, therefore, properly dismissed

the motion to correct an illegal sentence. See *State* v. *Ellis*, 174 Conn. App. 14, 17–18, 164 A.3d 829 (2017) ("Following the enactment of P.A. 15-84 . . . the defendant is now eligible for parole and can no longer claim that he is serving a sentence of life imprisonment, or its equivalent, without parole. The eighth amendment, as interpreted by *Miller*, does not prohibit a court from imposing a sentence of life imprisonment *with* the opportunity for parole for a juvenile homicide offender, nor does it require the court to consider the mitigating factors of youth before imposing such a sentence. . . . [Thus] the court properly dismissed the defendant's motion to correct an illegal sentence." [Citations omitted; emphasis in original; internal quotation marks omitted.]).[9]

## II

The defendant's second claim is that the court erred in dismissing his motion to correct an illegal sentence because a mandatory minimum sentence of twenty-five years of incarceration without the possibility of parole imposed on a juvenile homicide offender is unconstitutional under article first, §§ 8 and 9, of the Connecticut constitution, as it bars the court from sentencing juveniles to less than twenty-five years of incarceration upon due consideration of the *Miller* mitigating factors of youth. The state responds by arguing that because *Miller* did not apply to the sentencing procedures in this case, there was no violation of the state constitution. We agree with the state.

The following standard of review and applicable legal principles are relevant to this claim. "Our review of the defendant's constitutional claims is plenary." *State* v. *Williams-Bey*, 167 Conn. App. 744, 763–64, 144 A.3d 467 (2016), modified in part on other grounds after reconsideration, 173 Conn. App. 64, 164 A.3d 31, cert. granted on other grounds, 326 Conn. 920,    A.3d (2017);[10] see also *State* v. *Taylor G.*, 315 Conn. 734, 741, 110 A.3d 338 (2015) (challenge to "[t]he constitutionality of a statute presents a question of law over which our review is plenary" [internal quotation marks omitted]). "It is well established that federal constitutional law establishes a minimum national standard for the exercise of individual rights and does not inhibit state governments from affording higher levels of protection for such rights. . . . In several cases, our Supreme Court has concluded that the state constitution provides broader protection of individual rights than does the federal constitution. . . . It is by now well established that the constitution of Connecticut prohibits cruel and unusual punishments under the auspices of the dual due process provisions contained in article first, §§ 8 and 9. Those due process protections take as their hallmark principles of fundamental fairness rooted in our state's unique common law, statutory, and constitutional traditions. . . . Although neither provision of

the state constitution expressly references cruel or unusual punishments, it is settled constitutional doctrine that both of our due process clauses prohibit governmental infliction of cruel and unusual punishments." (Citations omitted; internal quotation marks omitted.) *State* v. *Williams-Bey*, supra, 768–69, quoting *State* v. *Santiago*, 318 Conn. 1, 16–17, 122 A.3d 1, reconsideration denied, 319 Conn. 912, 124 A.3d 496, stay denied, 319 Conn. 935, 125 A.3d 520 (2015). We must determine whether the Connecticut constitution prohibits, as cruel and unusual, the imposition on a juvenile of the mandatory minimum sentence of twenty-five years of incarceration for the charge of murder. We conclude that it does not.

"In ascertaining the contours of the protections afforded under our state constitution, we utilize a multifactor approach that we first adopted in *State* v. *Geisler*, 222 Conn. 672, 684–85, 610 A.2d 1225 (1992)." *State* v. *Santiago*, 319 Conn. 935, 937 n.3, 125 A.3d 520 (2015). "In *State* v. *Geisler*, [supra, 672], we identified six nonexclusive tools of analysis to be considered, to the extent applicable, whenever we are called on as a matter of first impression to define the scope and parameters of the state constitution: (1) persuasive relevant federal precedents; (2) historical insights into the intent of our constitutional forebears; (3) the operative constitutional text; (4) related Connecticut precedents; (5) persuasive precedents of other states; and (6) contemporary understandings of applicable economic and sociological norms, or, as otherwise described, relevant public policies. . . . These factors, which we consider in turn, inform our application of the established state constitutional standards—standards that, as we explain hereinafter, derive from United States Supreme Court precedent concerning the eighth amendment—to the defendant's claims in the present case." (Citations omitted.) *State* v. *Santiago*, supra, 318 Conn. 17–18.

A

Federal Precedent

As to the first *Geisler* factor, the mandatory minimum sentence of twenty-five years of incarceration imposed on a juvenile homicide offender does not constitute a cruel and unusual punishment under federal precedent. "The eighth amendment to the federal constitution establishes the minimum standards for what constitutes impermissibly cruel and unusual punishment. . . . Specifically, the United States Supreme Court has indicated that at least three types of punishment may be deemed unconstitutionally cruel: (1) inherently barbaric punishments; (2) excessive and disproportionate punishments; and (3) arbitrary or discriminatory punishments." (Citation omitted; footnote omitted.) Id., 18–19.

Inherently Barbaric Punishments

The first type of punishment that the United States Supreme Court has recognized as violating the eighth amendment includes the imposition of an inherently barbaric punishment. The prohibition against an inherently barbaric punishment "is directed toward manifestly and unnecessarily cruel punishments, such as torture and other wanton infliction of physical pain." Id., 20; see also *Graham* v. *Florida*, supra, 560 U.S. 59.

In the present case, the defendant does not argue that the imposition of a mandatory minimum sentence of twenty-five years of incarceration on a juvenile was an inherently barbaric punishment. We therefore proceed to determine whether his sentence constitutes an excessive and disproportionate punishment and/or an arbitrary or discriminatory punishment

2

Excessive and Disproportionate Punishments

The second type of punishment that the United States Supreme Court has recognized as violating the eighth amendment is one that is excessive and disproportionate. Specifically, "the eighth amendment mandates that punishment be proportioned and graduated to the offense of conviction." *State* v. *Santiago*, supra, 318 Conn. 20. "Although the unique aspects of adolescence had long been recognized in the [United States] Supreme Court's jurisprudence, it was not until the trilogy of *Roper* [v. *Simmons*, 543 U.S. 551, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005)], *Graham*, and *Miller* that the court held that youth and its attendant characteristics have constitutional significance for purposes of assessing proportionate punishment under the eighth amendment." (Footnote omitted.) *State* v. *Riley*, supra, 315 Conn. 644–45.

In *Roper* v. *Simmons*, supra, 543 U.S. 578, the United States Supreme Court held that the eighth and fourteenth amendments prohibit the imposition of the death penalty on juvenile offenders. As our Supreme Court explained in *Riley*: "Because of a juvenile's diminished culpability, the court [in *Roper*] concluded that the two penological justifications for the death penalty, retribution and deterrence, applied with lesser force to them than to adults. . . . The court suggested that, [t]o the extent the juvenile death penalty might have residual deterrent effect, it is worth noting that the punishment of life imprisonment without the possibility of parole is itself a severe sanction, in particular for a young person." (Citation omitted; internal quotation marks omitted.) *State* v. *Riley*, supra, 315 Conn. 646.

In *Graham* v. *Florida*, supra, 560 U.S. 82, the court held that the eighth amendment prohibits the sentence of life without the possibility of parole for juvenile non-homicide offenders. The court reasoned that the juve-

nile nonhomicide offender has a "twice diminished moral culpability" when compared to an adult homicide offender. Id., 69. The court in *Graham* further noted: "What the [s]tate must do, however, is give defendants like [Terrance Jamar] Graham some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation. . . . The [e]ighth [a]mendment does not foreclose the possibility that persons convicted of nonhomicide crimes committed before adulthood will remain behind bars for life. It does forbid [s]tates from making the judgment at the outset that those offenders never will be fit to reenter society." Id., 75.

"[I]n *Miller* v. *Alabama*, [supra, 567 U.S. 469–70], the court held that the eighth amendment prohibits mandatory sentencing schemes that mandate life in prison without the possibility of parole for juvenile homicide offenders, although a sentence of life imprisonment *without* the possibility of parole may be deemed appropriate following consideration of the child's age related characteristics and the circumstances of the crime." (Emphasis added; internal quotation marks omitted.) *Dumas* v. *Commissioner of Correction*, 168 Conn. App. 130, 136, 145 A.3d 355, cert. denied, 324 Conn. 901, 151 A.3d 1288 (2016). The court in *Miller* "summarized its holding as follows: [T]he [e]ighth [a]mendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders. . . . By making youth (and all that accompanies it) irrelevant to imposition of that harshest prison sentence, such a scheme poses too great a risk of disproportionate punishment." (Internal quotation marks omitted.) *State* v. *Riley*, supra, 315 Conn. 652.

Most recently, the court determined in *Montgomery* v. *Louisiana*, U.S. , 136 S. Ct. 718, 193 L. Ed. 2d 599 (2016), "that *Miller* applies retroactively upon collateral review to all juvenile offenders serving mandatory life without parole sentences because *Miller* announced a substantive rule of constitutional law. . . . The court also recognized that the substantive rule in *Miller* had procedural components regarding the factors that the judicial authority must consider. It stated that *Miller* requires [the judicial authority] to consider a juvenile offender's youth and attendant characteristics before determining that life without parole is a proportionate sentence. . . . The court noted that [t]he foundation stone for *Miller*'s analysis was [the] Court's line of precedent holding certain punishments disproportionate when applied to juveniles. . . . The court reiterated that because of children's decreased culpability and greater ability to reform, *Miller* recognized that the distinctive attributes of youth diminish the penological justifications for imposing life without parole on juvenile offenders. . . . *Miller*, then, did more than require [the judicial authority] to consider a juvenile offender's youth before imposing life without parole; it established

that the penological justifications for life without parole collapse in light of the distinctive attributes of youth." (Citations omitted; internal quotation marks omitted.) *State* v. *Williams-Bey*, supra, 167 Conn. App. 757–58.

"The United States Supreme Court, however, also recognized in *Montgomery* the practical limitations in remedying sentences that violated *Miller* upon its retroactive application. Juvenile offenders whose sentences violate *Miller* upon retroactive application did not have the opportunity to demonstrate the mitigating factors of youth at the time of sentencing. The court emphasized that *this violation of Miller could be remedied by affording those juvenile offenders parole eligibility, thus providing, in the context of Graham, a meaningful opportunity for release* . . . . The court also emphasized that [g]iving *Miller* retroactive effect . . . does not require States to relitigate sentences, let alone convictions, in every case where a juvenile offender received mandatory life without parole. A State may remedy a *Miller* violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them. See, e.g., Wyo. Stat. Ann. § 6-10-301 (c) (2013) (juvenile homicide offenders eligible for parole after [twenty-five] years). Allowing those offenders to be considered for parole ensures that juveniles whose crimes reflected only transient immaturity—and who have since matured—will not be forced to serve a disproportionate sentence in violation of the Eighth Amendment." (Citation omitted; emphasis altered; internal quotation marks omitted.) *State* v. *Williams-Bey*, supra, 167 Conn. App. 758–59. Moreover, the court in *Montgomery* further concluded that juveniles sentenced to life in prison without parole "must be given the opportunity to show their crime did not reflect irreparable corruption; and, if it did not, their hope for some years of life outside prison walls must be restored." *Montgomery* v. *Louisiana*, supra, 136 S. Ct. 736–37.

"These federal cases recognized that [t]he concept of proportionality is central to the Eighth Amendment. Embodied in the Constitution's ban on cruel and unusual punishments is the precept of justice that punishment for crime should be graduated and proportioned to [the] offense." (Internal quotation marks omitted.) *Dumas* v. *Commissioner of Correction*, supra, 168 Conn. App. 136.

In the present case, the defendant relies on *Roper*, *Graham* and *Miller* to support his claim that a mandatory minimum sentence of twenty-five years of incarceration imposed on a juvenile homicide offender is cruel under the eighth amendment to the United States constitution. The defendant further contends that the mandatory minimum sentence of twenty-five years of incarceration amounts to a life sentence under *Miller*.

Applying the recent federal precedent to the present

case, we are convinced that the mandatory minimum sentence imposed on the defendant does not rise to the level of a cruel and unusual punishment pursuant to *Roper*, *Graham*, *Miller* and *Montgomery*. Distinguishable from these federal cases, here, the defendant's sentence does not amount to a life sentence, or its functional equivalent, without the possibility for parole. Rather, in the present case, the defendant is parole eligible pursuant to § 54-125a (f). Specifically, although at the time of sentencing, the crime of which the defendant was convicted made him ineligible for parole, in light of the subsequent passage of P.A 15-84 the defendant is parole eligible. Following *Montgomery*, the opportunity for parole eligibility "ensures that juveniles whose crimes reflected only transient immaturity—and who have since matured—will not be forced to serve a disproportionate sentence in violation of the Eighth Amendment." *Montgomery* v. *Louisiana*, supra, 136 S. Ct. 736. We emphasize that *Miller* applies only to life sentences, or its functional equivalent, without the possibility of parole.

After reviewing the foregoing federal precedent, we conclude that the *Miller* mitigating factors of youth did not apply to the defendant's sentence of twenty-five years of incarceration. Because the defendant is parole eligible, the defendant is not serving a sentence of life imprisonment, nor its functional equivalent, without the possibility of parole. Therefore, as *Miller* applies only to life sentences, or their functional equivalent, *without the possibility of parole*, the sentencing court here was not required to consider the *Miller* youth related mitigating factors.

Accordingly, in relying on the foregoing federal precedent, we are convinced that the mandatory minimum sentence of twenty-five years *with the possibility of parole* imposed on a juvenile homicide offender does not constitute an excessive and disproportionate punishment under the circumstances of this case.

3

Arbitrary or Discriminatory Punishments

The third type of punishment that the United States Supreme Court has recognized as cruel and unusual under the eighth amendment is a punishment that is "imposed in an arbitrary and unpredictable fashion . . . ." (Internal quotation marks omitted.) *State* v. *Santiago*, supra, 318 Conn. 23. The defendant contends that a determination that his mandatory minimum sentence was unconstitutional, will lead to the elimination of racial discrimination. To support his assertion the defendant relies upon statistical data compiled pertaining to all juvenile offenders serving life without parole in Connecticut. We are not persuaded by the defendant's argument.

In particular, the United States Supreme Court pre-

viously has rejected a similar argument involving racial bias that impermissibly tainted sentencing decisions, in the context of capital punishment. In *McCleskey* v. *Kemp*, 481 U.S. 279, 319, 107 S. Ct. 1756, 95 L. Ed. 2d 262 (1987), the court noted: "The Constitution does not require that a State eliminate any demonstrable disparity that correlates with a potentially irrelevant factor in order to operate a criminal justice system . . . ." The court explained that the legislatures are "better qualified to weigh and evaluate the results of statistical studies in terms of their own local conditions and with a flexibility of approach that is not available to the courts . . . ." (Citation omitted; internal quotation marks omitted.) Id. The court further noted that "[i]t is not the responsibility—or indeed even the right— of this Court to determine the appropriate punishment for particular crimes. It is the legislatures, the elected representatives of the people, that are constituted to respond to the will and consequently the moral values of the people." (Internal quotation marks omitted.) Id. After our review of the foregoing legal principles, we conclude that the imposition of a mandatory minimum sentence of twenty-five years of incarceration imposed on a juvenile homicide offender is not an arbitrary or discriminatory punishment.

Therefore, under the federal precedent, the mandatory minimum sentence of twenty-five years of incarceration *with the possibility of parole*[11] imposed on a juvenile homicide offender does not fall within the three types of punishments that the United States Supreme Court has determined to constitute a cruel and unusual punishment in violation of the eighth amendment. Accordingly, the first *Geisler* factor does not support the defendant's claim.

B

State Constitutional History

The second *Geisler* factor, the historical approach, in theory, is neutral. In his brief, the defendant acknowledges that Connecticut is a progressive state. He further explains that at common law, children older than the age of fourteen were treated as adults, which led to the creation of juvenile courts because people were "appalled by adult procedures and penalties, and by the fact that children could be given long prison sentences and mixed in jails with hardened criminals." (Internal quotation marks omitted.) He then discusses the trilogy of the United States Supreme Court cases of *Roper*, *Graham* and *Miller*, followed by our Supreme Court's decisions in *Riley* and *Casiano* v. *Commissioner of Correction*, 317 Conn. 52, 115 A.3d 1031 (2015), cert. denied sub nom. *Semple* v. *Casiano*,      U.S.    , 136 S. Ct. 1364, 194 L. Ed. 2d 376 (2016), and explains that these decisions reflect our evolving standards of decency in the prohibition against cruel and unusual punishment.

In turn, the state, citing *State* v. *Jose C.*, Superior Court, judicial district of New Haven, Docket No. CR-6421185 (March 21, 1996) (16 Conn. L. Rptr. 419, 425), aff'd sub nom. *State* v. *Angel C.*, 245 Conn. 93, 715 A.2d 652 (1998), points out that "[a]t the time of the adoption of its 1818 constitution, Connecticut followed the common law and treated fourteen and fifteen year olds as adults when charged with a felony offense. It was not until 1921 that Connecticut established by statute a juvenile justice system." (Internal quotation marks omitted.) *State* v. *Williams-Bey*, supra, 167 Conn. App. 777. These historical considerations provide no direction in answering the specific question of whether the mandatory minimum sentence of twenty-five years of incarceration imposed upon a juvenile for a homicide offense is prohibited under article first, §§ 8 and 9, of the Connecticut constitution. This *Geisler* factor is, therefore, neutral.

C

Constitutional Text

In regard to the third *Geisler* factor, we conclude that the relevant constitutional textual approach is neutral. "It is by now well established that the constitution of Connecticut prohibits cruel and unusual punishments under the auspices of the dual due process provisions contained in article first, §§ 8 and 9. Those due process protections take as their hallmark principles of fundamental fairness rooted in our state's unique common law, statutory, and constitutional traditions. Although neither provision of the state constitution expressly references cruel or unusual punishments, it is settled constitutional doctrine that both of our due process clauses prohibit governmental infliction of cruel and unusual punishments." *State* v. *Santiago*, supra, 318 Conn. 16–17. Notably, "[a]rticle first, §§ 8 and 9, of the Connecticut constitution [does] not contain any language specifically applying to juveniles." *State* v. *Williams-Bey*, supra, 167 Conn. App. 769. In other words, the text of these constitutional provisions does not give juveniles any specific special status or protections. Id. Rather, the text of the Connecticut constitution makes no differentiation between juveniles and adults. See id. Thus, the third *Geisler* factor is neutral.

D

Connecticut Precedents

The fourth *Geisler* factor, the relevant Connecticut precedents, weighs against the defendant's claim. "Specifically, we recognized that, under the state constitution, whether a challenged punishment is cruel and unusual is to be judged according to the evolving standards of human decency . . . and that those standards are reflected not only in constitutional and legislative text, but also in our history and in the teachings of the jurisprudence of our sister states as well as that of the

federal courts." (Citations omitted; internal quotation marks omitted.) *State* v. *Santiago*, supra, 318 Conn. 42.

The most recent and relevant Connecticut precedents on juvenile sentencing are set forth in *State* v. *Delgado*, supra, 323 Conn. 810–11; *Casiano* v. *Commissioner of Correction*, supra, 317 Conn. 62; *State* v. *Taylor G.*, supra, 315 Conn. 738; *State* v. *Riley*, supra, 315 Conn. 652; and *State* v. *Logan*, 160 Conn. App. 282, 291–93, 125 A.3d 581 (2015), cert. denied, 321 Conn. 906, 135 A.3d 279 (2016).

As discussed in part I of this opinion, our Supreme Court in *Delgado* concluded that once our state legislature affords a juvenile homicide offender the opportunity for parole, *Miller* no longer applies. See *State* v. *Delgado*, supra, 323 Conn. 810–11. Specifically, the court noted: "Following the enactment of P.A. 15-84, however, the defendant is now eligible for parole and can no longer claim that he is serving a sentence of life imprisonment, or its equivalent, without parole. The eighth amendment as interpreted by *Miller*, does not prohibit a court from imposing a sentence of life imprisonment *with* the opportunity for parole on a juvenile homicide offender, nor does it require the court to consider the mitigating factors of youth before imposing such a sentence. . . . Rather, under *Miller*, a sentencing court's obligation to consider youth related mitigating factors is limited to cases in which the court imposes a sentence of life, or its [functional] equivalent, *without* parole." (Citation omitted; emphasis in original.) Id. The court further concluded: "This conclusion is consistent with the law in other jurisdictions that have considered this issue and have concluded that *Miller* simply does not apply when a juvenile's sentence provides an opportunity for parole; that is, a sentencing court has no constitutionally founded obligation to consider any specific youth related factors under such circumstances."[12] Id., 811.

"In *State* v. *Taylor G.*, [supra, 315 Conn. 738, 741], the defendant was fourteen and fifteen years old when he committed nonhomicide offenses for which the trial court imposed a total effective sentence of ten years imprisonment followed by three years of special parole. Our Supreme Court concluded that the ten and five year mandatory minimum sentences [that the defendant would serve concurrently], under which the defendant is likely to be released before he reaches the age of thirty, do not approach what the [United States Supreme Court] described in *Roper*, *Graham* and *Miller* as the two harshest penalties. . . . The court reasoned that [a]lthough the deprivation of liberty for any amount of time, including a single year, is not insignificant, *Roper*, *Graham* and *Miller* cannot be read to mean that all mandatory deprivations of liberty are of potentially constitutional magnitude, and that the defendant will be able to work toward his rehabilitation and look for-

ward to release at a relatively young age." (Emphasis omitted; internal quotation marks omitted.) *Dumas* v. *Commissioner of Correction*, supra, 168 Conn. App. 137.

In *State* v. *Riley*, supra, 315 Conn. 653, our Supreme Court characterized *Miller* as "impacting two aspects of sentencing: (1) that a lesser sentence than life without parole must be available for a juvenile offender; and (2) that the sentencer must consider age related evidence as mitigation when deciding whether to irrevocably sentence juvenile offenders to a [term of life imprisonment, or its equivalent, without parole]." Id. Our Supreme Court "therefore concluded that the dictates set forth in *Miller* may be violated even when the sentencing authority has discretion to impose a lesser sentence than life without parole if it fails to give due weight to evidence that *Miller* deemed constitutionally significant before determining that such a severe punishment is appropriate. . . . Because the record in *Riley* [did] not clearly reflect that the court considered and gave mitigating weight to the defendant's youth and its hallmark features when considering whether to impose the functional equivalent to life imprisonment without parole, [the court] concluded that the defendant in *Riley* was entitled to a new sentencing proceeding." (Citation omitted; internal quotation marks omitted.) *State* v. *Delgado*, supra, 323 Conn. 806–807.

The court further explained that *Miller* applies to discretionary sentencing schemes and term of years sentencing schemes that are the functional equivalent of life without parole. *State* v. *Riley*, supra, 315 Conn. 655–57. In addressing what constitutes a functional equivalent of a sentence of life without parole, the court noted that an aggregate sentence of 100 years of incarceration without the possibility of parole imposed on a juvenile offender "is the functional equivalent to life without the possibility of parole." Id., 642. Because the sentencing court in *Riley* "made no reference to the defendant's age at the time he committed the offenses"; id., 643; when imposing this sentence, our Supreme Court concluded that the defendant's sentence violated *Miller* and therefore remanded the case for resentencing with consideration of the factors identified in *Miller*. Id., 660–61.

"Several months after *Riley* was decided, [the] court concluded that the required sentencing considerations identified in *Miller* applied retroactively in collateral proceedings." *State* v. *Delgado*, supra, 323 Conn. 806–807 (referring to *Casiano* v. *Commissioner of Correction*, supra, 317 Conn. 62). "[I]n *Casiano* v. *Commissioner of Correction*, [supra, 317 Conn. 55], the petitioner was sixteen years old when he committed homicide and nonhomicide offenses for which the trial court imposed a total effective sentence of fifty years imprisonment without the possibility of parole pursuant

to a plea agreement. Our Supreme Court determined that *Miller* applies retroactively to cases arising on collateral review, and that a fifty year sentence without the possibility of parole was the functional equivalent of life imprisonment without the possibility of parole and, therefore, subject to the sentencing procedures set forth in *Miller*. . . . The court observed that because the petitioner would be released from prison at the age of sixty-six and the average life expectancy of a male in the United States is seventy-six years, he would only have approximately ten more years to live outside of prison after his release. . . . The court explained that [a] juvenile is typically put behind bars before he has had the chance to exercise the rights and responsibilities of adulthood, such as establishing a career, marrying, raising a family, or voting. Even assuming the juvenile offender does live to be released, after a half century of incarceration, he will have irreparably lost the opportunity to engage meaningfully in many of these activities and will be left with seriously diminished prospects of his quality of life for the few years he has left. . . . The court concluded that a fifty year term and its grim prospects for any future outside of prison effectively provide a juvenile offender with no chance for fulfillment outside prison walls, no chance for reconciliation with society, no hope." (Internal quotation marks omitted.) *Dumas* v. *Commissioner of Correction*, supra, 168 Conn. App. 138.

Moreover, in *State* v. *Logan*, supra, 160 Conn. App. 291–93, "this court held that a thirty-one year sentence for murder and conspiracy to commit murder, imposed on a defendant who was seventeen years old at the time of the offenses, was not the equivalent of a life sentence because even if he is not paroled, [he] will be able to work toward rehabilitation, and can look forward to release at an age when he will still have the opportunity to live a meaningful life outside of prison and to become a productive member of society. Although the deprivation of liberty for any amount of time, including a single year, is not insignificant . . . *Miller* cannot be read to mean that all mandatory deprivations of liberty are of potentially constitutional magnitude. . . . The court concluded that thirty-one years was not the equivalent of a life sentence; relief pursuant to *Miller*, then, was unavailable to the defendant . . . ." (Citation omitted; internal quotation marks omitted.) *Dumas* v. *Commissioner of Correction*, supra, 168 Conn. App. 138–39 (sentence of thirty years for first degree manslaughter with firearm committed when juvenile was fourteen years old did not implicate eighth amendment prohibition against cruel and unusual punishment under *Miller*).

In light of the foregoing decisions recently decided by this state's appellate courts, the legislature in 2015 passed P.A. 15-84 (now codified in part in § 54-125a [f]), "to respond to *Miller* and *Graham* by providing

increased parole eligibility to juvenile offenders." *State* v. *Williams-Bey*, supra, 167 Conn. App. 777.[13] Pursuant to § 54-125a (f), "all juveniles who are sentenced to more than ten years imprisonment are eligible for parole. *State* v. *Delgado*, supra, 323 Conn. 807. We emphasize that our Supreme Court "has recognized that the fixing of prison terms for specific crimes involves a substantive penological judgment that, as a general matter, *is properly within the province of legislatures, not courts*." (Emphasis added; internal quotation marks omitted.) *State* v. *Riley*, supra, 315 Conn. 661.

Even when a defendant was not eligible for parole pursuant to § 54-125a (f), this court has determined that a sentence of thirty-one years of incarceration imposed on a juvenile homicide offender was not considered the equivalent of a life sentence and did not require the sentencing court to consider the *Miller* mitigating factors of youth. See *State* v. *Logan*, supra, 160 Conn. App. 293. As the defendant in the present case was sentenced to a mandatory minimum of twenty-five years of incarceration, that sentence is less lengthy than the sentence of thirty-one years of incarceration imposed on the juvenile homicide offender in *Logan*. See id., 285; see also *Dumas* v. *Commissioner of Correction*, supra, 168 Conn. App. 139 (thirty year sentence imposed on juvenile did not implicate application of *Miller*). Suffice it to say, the defendant's twenty-five year sentence did not amount to a life sentence, or its functional equivalent, triggering the application of the *Miller* mitigating factors of youth. Therefore, this *Geisler* factor weighs against the defendant.

### E

### Sister State Precedents

We next address the fifth *Geisler* factor, which reviews precedent from other states. Regarding this factor, the defendant relies on *State* v. *Lyle*, 854 N.W.2d 378 (Iowa 2014). In *Lyle*, the Supreme Court of Iowa determined that "a statute mandating a sentence of incarceration in a prison for juvenile offenders with no opportunity for parole until a minimum period of time has been served is unconstitutional under article I, section 17 of the Iowa constitution."[14] Id., 380. In *Lyle*, the court further noted: "Mandatory sentencing for adults does not result in cruel and unusual punishment but for children it fails to account for too much of what we know is child behavior." Id., 402. The defendant's reliance on *Lyle* is unavailing for two reasons.

First, our Supreme Court in *Taylor G.*[15] recently rejected the applicability of *Lyle* to our state jurisprudence. *State* v. *Taylor G.*, supra, 315 Conn. 750–51 n.8. In explaining that the dissenting justice's reliance on *Lyle* was misplaced, the majority of the court in *Taylor G.* explained: "[A]lthough [the dissent] relies extensively on a recent Iowa Supreme Court decision holding

that mandatory minimum sentences for juvenile offenders are impermissible, [the dissent] omits the fact that the Iowa court chose not to decide the defendant's claim in that case under federal law, as the defendant originally argued, but, rather, under the Iowa constitution after requesting additional briefing from the parties on that issue. . . . [The dissent] also omits the fact that, in interpreting the Iowa constitution, the Iowa Supreme Court relied in part on the state legislature's decision in 2013 to expand the discretion of state courts in juvenile matters by amending Iowa's sentencing statutes to remove mandatory sentencing for juveniles in most cases . . . on other provisions in the Iowa criminal statutes vesting considerable discretion in courts when deciding juvenile matters . . . and on a trilogy of recent juvenile cases decided by the court under the Iowa constitution. . . . Finally, [*the dissent*] *omits the fact that the Iowa court recognized that no other court in the nation has held that its constitution or the [f]ederal [c]onstitution prohibits a statutory schema that prescribes a mandatory minimum sentence for a juvenile offender* . . . and that *no* . . . national consensus exists against the imposition of mandatory sentences on juvenile offenders; the practice is common across jurisdictions." (Citations omitted; emphasis altered; internal quotation marks omitted.) Id., 751 n.8. Following the majority in *Taylor G.*, we conclude that the defendant's reliance on *Lyle* is misplaced.

Second, our Supreme Court has also discussed the trends in other jurisdictions pertaining to mandatory minimum sentencing schemes for juvenile offenders. In particular, in *State* v. *Allen*, 289 Conn. 550, 580–81, 958 A.2d 1214 (2008), the court noted: "[W]e also expressly adopted the reasoning of the Delaware Supreme Court, which, in *Wallace* v. *State*, 956 A.2d 630 (Del. 2008), stated in relevant part: Every state provides some mechanism for the imposition of adult sentences on a juvenile offender for at least some sort of crime. In other jurisdictions, there is no evident trend away from imposing serious adult criminal liability [on] juvenile offenders. . . . [I]n forty-nine states, the age at which a first degree murderer can face adult disposition is fourteen years or younger. Forty-two states permit the sentencing of juveniles to life without parole. In twenty-seven of those states, the sentence is mandatory for anyone, child or adult, found guilty of [m]urder in the [f]irst [d]egree. . . . [I]n the past twenty years, courts have consistently rejected [e]ighth [a]mendment claims made by juvenile murderers attacking their life sentences." (Internal quotation marks omitted.) *State* v. *Carrasquillo*, 290 Conn. 209, 218–19, 962 A.2d 772 (2009). In addition, despite the Iowa Supreme Court's elimination in *Lyle* of mandatory minimum sentences for juveniles, numerous state legislatures have maintained mandatory minimum sentences for juvenile offenders sentenced in adult court. See, e.g., Delaware: Del. Code Ann. tit. 11, § 4209A (West

Supp. 2016) (twenty-five years minimum mandatory sentence for first degree murder); Louisiana: La. Rev. Stat. Ann. § 15:574.4 E (1) (a) (West Supp. 2017) (juvenile convicted of first or second degree murder parole eligible after thirty-five years); Massachusetts: Mass. Ann. Laws c. 279, § 24 (LexisNexis 2015) (juvenile convicted of first degree murder parole eligible after not less than twenty nor more than thirty years); Nebraska: Neb. Rev. Stat. § 28-105.02 (2016) (mandatory minimum sentence of forty years of incarceration for murder when offender was under age of eighteen); Nevada: Nev. Rev. Stat. Ann. §§ 176.025 and 200.030 (2015) (juvenile convicted of first degree murder subject to sentence of life with parole after twenty years); Oregon: Or. Rev. Stat. § 163.115 (2015) (if at least fifteen years old at time of crime, juvenile homicide offender parole eligible after twenty-five years); Pennsylvania: 18 Pa. Cons. Stat. Ann. § 1102.1 (a) (1) and (2) (West 2015) (first degree murder; if committed when defendant fifteen years of age or older, subject to life without parole or incarceration for minimum of thirty-five years; if committed when defendant younger than fifteen years of age, subject to life without parole or incarceration for minimum of twenty-five years); Washington: Wash. Rev. Code Ann. § 9.94A.730 (1) (West Cum. Supp. 2017) (any person convicted of crimes committed prior to eighteenth birthday, eligible for sentence review for early release after serving twenty years); West Virginia: W. Va. Code Ann. §§ 61-11-23 (b) and 62-12-13 (c) (LexisNexis Supp. 2017) (juvenile convicted of offense punishable by life imprisonment parole eligible after fifteen years).

Therefore, the persuasive precedent from our sister states weighs against the defendant with respect to the fifth *Geisler* factor.

F

Contemporary Understanding of Applicable
Economic and Sociological Norms

The sixth *Geisler* factor involves consideration of the contemporary understandings of applicable economic and sociological norms. "Whether a punishment is disproportionate and excessive is to be judged by the contemporary, evolving standards of decency that mark the progress of a maturing society. . . . In other words, the constitutional guarantee against excessive punishment is not fastened to the obsolete but may acquire meaning as public opinion becomes enlightened by a humane justice." (Citations omitted; internal quotation marks omitted.) *State* v. *Santiago*, supra, 318 Conn. 46–47. Moreover, "under the governing legal framework, we must look beyond historical conceptions to the evolving standards of decency that mark the progress of a maturing society. . . . This is because [t]he standard of extreme cruelty is not merely descriptive, but necessarily embodies a moral judgment. The standard itself remains the same, but its applicability must

change as the basic mores of society change." (Internal quotation marks omitted.) Id., 50. Our Supreme Court "and the United States Supreme Court have looked to five objective indicia of society's evolving standards of decency: (1) the historical development of the punishment at issue; (2) legislative enactments; (3) the current practice of prosecutors and sentencing juries; (4) the laws and practices of other jurisdictions; and (5) the opinions and recommendations of professional associations." Id., 52.

As to these "sociological considerations, the laws of Connecticut have changed in several areas throughout our state's history to provide special protections to juveniles. Section 54-125a (f) specifically confers special protection on juveniles, as it applies only to those who were under the age of eighteen at the time they committed their offenses." *State* v. *Williams-Bey*, supra, 167 Conn. App. 777. Specifically, the language of § 54-125a (f) explicitly provides parole eligibility for juvenile offenders. Our legislature specifically enacted § 54-125a (f) "to respond to *Miller* and *Graham* by providing increased parole eligibility to juvenile offenders." Id. This recent legislation reflects the current sociological and economic norms as to youth related sentencing considerations. The sixth *Geisler* factor weighs against the defendant.

For the foregoing reasons, the *Geisler* factors do not support the defendant's state constitutional claim. We, therefore, conclude that the mandatory minimum sentence of twenty-five years of incarceration imposed on a juvenile homicide offender does not violate article first, §§ 8 and 9, of the Connecticut constitution.

### III

The defendant's final claim is that the trial court committed constitutional error when it accepted his waiver, through counsel, of his right to a presentence investigation (report). Specifically, the defendant contends that his sentence is illegal because the court failed to canvass him prior to permitting him to waive the report and that this failure compromised his constitutional rights under *Miller*, which raised the report to a level of constitutional magnitude as applied to adolescents. We disagree.

The following facts are relevant to our resolution of this claim. During the plea canvass, the defendant affirmed that he had had enough time to discuss the plea with his attorney and that he was satisfied with the legal advice he had received. The defendant further affirmed that he was entering his pleas voluntarily and by his own free will. In addition, the defendant acknowledged that the minimum exposure for murder, conspiracy to commit murder and assault in the first degree was 100 years of incarceration with a mandatory minimum sentence of thirty years of incarceration. Thereafter,

the court, *Clifford, J.*, stated: "You know that this matter has been discussed, and you know that I've indicated, based on your plea of guilty on the charge of murder, I would impose a prison sentence of twenty-five years; do you understand that?" The defendant responded: "Yes, Your Honor."

After canvassing the defendant and accepting the pleas, the court stated that it would waive the report. In response, defense counsel stated: "Yes, Your Honor, in light of the fact that the court has indicated what the sentence will be, there's no reason to bring him back in eight weeks; he can be sentenced today." The court then asked the defendant if he had anything that he wanted to say, to which he responded in the negative.

In accordance with the agreement, the court sentenced the defendant to twenty-five years of incarceration on the charge of murder, twenty years of incarceration on the charge of conspiracy to commit murder and, ten years of incarceration, five of which were the mandatory minimum, on the charge of assault in the first degree, with all sentences to be served concurrently. The total effective sentence imposed by the court was twenty-five years of incarceration.

We begin by noting that it is not disputed that the defendant did not raise his claim about the presentence investigation report before the trial court or in his motion to correct an illegal sentence, and therefore, he seeks review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). In *Golding*, our Supreme Court held that "[a] defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis omitted; internal quotation marks omitted.) *State* v. *Mark*, 170 Conn. App. 254, 264, 154 A.3d 572, cert. denied, 324 Conn. 926, 155 A.3d 1269 (2017); see also *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015) (modifying third prong of *Golding* by eliminating word "clearly" before words "exists" and "deprived").

We conclude that review under *State* v. *Golding*, supra, 213 Conn. 239–40, is unwarranted. This court previously has concluded that *Golding* review is not warranted where a defendant, on appeal, raises a challenge to the legality of his sentence that was not presented in his underlying motion to correct. See *State* v. *Starks*, 121 Conn. App. 581, 591–92, 997 A.2d 546 (2010) (where defendant failed to raise claim in motion

to correct illegal sentence, *Golding* review of unpreserved claim unavailable due to trial court's exclusive judicial authority and superior position to consider motion to correct illegal sentence and fact that defendant retains "the right, at any time, to file a motion to correct an illegal sentence" to pursue unpreserved claim). Our reason for this determination rests on the notion that the judicial authority to consider a motion to correct an illegal sentence lies with the trial court and not with an appellate court. Id., 591; see *Cobham* v. *Commissioner of Correction*, 258 Conn. 30, 38 n.13, 779 A.2d 80 (2001) ("[t]oday we clarify the meaning of 'judicial authority' in [Practice Book] § 43-22 . . . to mean solely the trial court"). Specifically, in *Starks*, this court noted that "[t]he judicial authority may *at any time* correct an illegal sentence . . . . Our Supreme Court has interpreted the term 'judicial authority,' as used in Practice Book § 43-22, to refer to the trial court, not the appellate courts of this state." (Citation omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Starks*, supra, 591–92. "Furthermore, the defendant has the right, at any time, to file a motion to correct an illegal sentence and raise the [waiver of the report] claim before the trial court. . . . Given the present circumstances, in which the defendant may seek and obtain any appropriate redress before the trial court, we are not persuaded that . . . review of the claim under *Golding* . . . is warranted . . . ." Id., 592; see also *State* v. *Baker*, 168 Conn. App. 19, 21 n.6, 145 A.3d 955 ("[t]his court previously has recognized that [i]t is not appropriate to review an unpreserved claim [pertaining to a motion to correct] an illegal sentence for the first time on appeal" [internal quotation marks omitted]), cert. denied, 323 Conn. 932, 150 A.3d 232 (2016). Accordingly, we decline to reach the merits of the defendant's claim as to the presentence investigation report.[16]

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The *Miller* factors refer to the sentencing court's obligation to consider a juvenile's age and circumstances related to age at an individualized sentencing hearing as mitigating factors before imposing a sentence of life imprisonment without parole. See *Miller* v. *Alabama*, 567 U.S. 460, 479–80, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012).

[2] The defendant pleaded guilty pursuant to the *Alford* doctrine to the crimes of murder in violation of § 53a-54a, conspiracy to commit murder in violation of §§ 53a-48 (a) and 53a-54a, and, in a different docket number, assault in the first degree in violation of § 53a-59 (a) (1). See *North Carolina* v. *Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970). The sentences on only the conviction of murder and conspiracy to commit murder are at issue in this appeal.

[3] Although the defendant originally was sentenced to twenty-five years of incarceration without the possibility of parole, with the subsequent passage of No. 15-84 of the 2015 Public Acts (now codified in part in § 54-125a), the defendant, according to the state, was scheduled to be released on parole on May 21, 2017.

[4] Practice Book § 43-22 provides: "The judicial authority may at any time correct an illegal sentence or other illegal disposition, or it may correct a sentence imposed in an illegal manner or any other disposition made in an illegal manner."

[5] *Miller* requires "that a sentencing court consider the defendant's chrono-

logical age and its hallmark features as a mitigating factor prior to sentencing a juvenile offender to life without parole or its functional equivalent." (Internal quotation marks omitted.) *State* v. *Williams-Bey*, 167 Conn. App. 744, 751 n.3, 144 A.3d 467 (2016), modified in part on other grounds after reconsideration, 173 Conn. App. 64, 164 A.3d 31, cert. granted on other grounds, 326 Conn. 920,      A.3d      (2017).

[6] *Graham* requires that "a juvenile offender serving a life sentence or its functional equivalent is entitled to some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." (Internal quotation marks omitted.) *State* v. *Williams-Bey*, 167 Conn. App. 744, 751 n.3, 144 A.3d 467 (2016), modified in part on other grounds after reconsideration, 173 Conn. App. 64, 164 A.3d 31, cert. granted on other grounds, 326 Conn. 920,      A.3d      (2017).

[7] The decision in *Boyd* relied upon the reasoning in *Delgado*, and, therefore, we address only *Delgado*.

[8] "Section 1 of No. 15-84 of the 2015 Public Acts, codified at General Statutes [§ 54-125a], provides in relevant part: (f) (1) Notwithstanding the provisions of subsections (a) to (e), inclusive, of this section, a person convicted of one or more crimes committed while such person was under eighteen years of age, who is incarcerated on or after October 1, 2015, and who received a definite sentence or total effective sentence of more than ten years for such crime or crimes prior to, on or after October 1, 2015, may be allowed to go at large on parole in the discretion of the panel of the Board of Pardons and Paroles for the institution in which such person is confined, provided (A) if such person is serving a sentence of fifty years or less, such person shall be eligible for parole after serving sixty per cent of the sentence or twelve years, whichever is greater, or (B) if such person is serving a sentence of more than fifty years, such person shall be eligible for parole after serving thirty years. Nothing in this subsection shall limit a person's eligibility for parole release under the provisions of subsections (a) to (e), inclusive, of this section if such person would be eligible for parole release at an earlier date under any of such provisions.

"(2) The board shall apply the parole eligibility rules of this subsection only with respect to the sentence for a crime or crimes committed while a person was under eighteen years of age. . . .

"(3) Whenever a person becomes eligible for parole release pursuant to this subsection, the board shall hold a hearing to determine such person's suitability for parole release. . . .

***

"(5) After such hearing, the board shall articulate for the record its decision and the reasons for its decision. If the board determines that continued confinement is necessary, the board may reassess such person's suitability for a new parole hearing at a later date to be determined at the discretion of the board, but not earlier than two years after the date of its decision.

"(6) The decision of the board under this subsection shall not be subject to appeal." (Internal quotation marks omitted.) *State* v. *Delgado*, supra, 323 Conn. 803 n.1.

[9] In *Ellis*, this court, following *Delgado*, concluded that despite the defendant's originally having faced "the possibility of eighty-one and one-half years incarceration with a mandatory minimum sentence of twenty-five years" when he was sentenced; *State* v. *Ellis*, supra, 174 Conn. App. 16 n.2; he became parole eligible with the recent enactment of P.A. 15-84, which is now codified in part in § 54-125a (f), and could no longer claim that he was serving a sentence of life imprisonment, or its equivalent, without parole. Id., 17.

[10] On July 10, 2017, our Supreme Court granted the defendant's petitions for certification to appeal from this court's decisions in *State* v. *Williams-Bey*, supra, 167 Conn. App. 744, and *State* v. *Williams-Bey*, 173 Conn. App. 64, 164 A.3d 31 (2017), limited to the following two questions:

"1. Under the Connecticut constitution, article first, §§ 8 and 9, are all juveniles entitled to a sentencing proceeding at which the court expressly considers the youth related factors required by the United States constitution for cases involving juveniles who have been sentenced to life imprisonment without possibility of release? See *Miller* v. *Alabama*, [supra, 567 U.S. 460 (2012)]?

"2. If the answer to the first question is in the affirmative and a sentencing court does not comply with the sentencing requirements under the Connecticut constitution, does parole eligibility under General Statutes § 54-125a (f) adequately remedy any state constitutional violation?" *State* v. *Williams-Bey*, 326 Conn. 920, 921,      A.3d      (2017).

[11] Under the provisions of the effective § 54-125a (f) (1) (A) and (B), juveniles sentenced to more than ten years of incarceration are parole eligible after serving 60 percent of their sentence or twelve years, whichever is greater, if they are serving a sentence of fifty years or less; if they are serving a sentence of more than fifty years, they are parole eligible after serving thirty years.

[12] "See *Fisher* v. *Haynes*, United States District Court, Docket No. [C15-5747BHS], 2016 WL 5719398 (W.D. Wn. September 30, 2016) (defendant sentenced to life imprisonment with parole was not entitled to relief under *Miller*); *People* v. *Cornejo*, 3 Cal. App. 5th 36, 67–68, 207 Cal. Rptr. 3d 366 (2016) (after legislation afforded defendant opportunity for parole, sentence imposed by trial court was no longer sentence of life without parole or functional equivalent and no *Miller* claim arises, and same rationale applied to both mandatory and discretionary sentences); *State* v. *Tran*, 138 Haw. 298, 307, 378 P.3d 1014 (2016) (United States Supreme Court's statements in *Montgomery* make clear that *Miller* does not require individualized sentencing or consideration of the mitigating factors of youth in every case involving a juvenile offender, but only [when] a sentence of life imprisonment without parole is imposed on a juvenile offender); *State* v. *Cardeilhac*, 293 Neb. 200, 218, 876 N.W.2d 876 (2016) (*Miller* did not apply when defendant's sentence afforded opportunity for parole); *State* v. *Lasane*, New Jersey Superior Court, Appellate Division, Docket No. 06-02-00365 (September 28, 2016) (*Miller* does not apply to juvenile offender who retains prospect of parole within lifetime); *State* v. *Terrell*, Ohio Court of Appeals, Docket No. 103248 (June 23, 2016) (declining to extend *Miller* to cases in which parole is afforded), appeal denied, Ohio Supreme Court, Docket No. 2016-Ohio-7854 (November 23, 2016); see also *State* v. *Williams-Bey*, supra, 167 Conn. App. 772." (Internal quotation marks omitted.) *State* v. *Delgado*, supra, 323 Conn. 811–12 n.7.

[13] In *State* v. *Williams-Bey*, supra, 167 Conn. App. 744, this court explained: "Under § 54-125a (f), a juvenile offender serving a sentence of greater than ten years incarceration on or after October 1, 2015, will be parole eligible. If the sentence is fifty years incarceration or less, the juvenile becomes parole eligible after serving 60 percent of his or her sentence, or twelve years, whichever is greater. If the sentence is greater than fifty years, the juvenile offender becomes parole eligible after serving thirty years. The statute also requires the parole board to consider whether such person has demonstrated substantial rehabilitation since the date such crime or crimes were committed considering such person's character, background and history, as demonstrated by factors, including, but not limited to . . . the age and circumstances of such person as of the date of the commission of the crime or crimes, whether such person has demonstrated remorse and increased maturity since the date of the commission of the crime or crimes . . . obstacles that such person may have faced as a child or youth in the adult correctional system, the opportunities for rehabilitation in the adult correctional system and the overall degree of such person's rehabilitation considering the nature and circumstances of the crime or crimes. . . . These criteria substantially encompass the mitigating factors of youth referenced in *Miller* and *Riley*. . . . Furthermore, the statute ensures that indigent juvenile offenders will have the right to counsel in obtaining, in the terminology of *Graham*, a meaningful opportunity to obtain release. . . . Overall, the legislature not only gave *Miller* retroactive application, but also effectively eliminated life without the possibility of parole, even as a discretionary sentence, for juvenile offenders in Connecticut." (Citations omitted; internal quotation marks omitted.) Id., 755–57.

[14] Article I, § 17, of the Iowa constitution provides: "Excessive bail shall not be required; excessive fines shall not be imposed, and cruel and unusual punishment shall not be inflicted."

[15] We note that our Supreme Court in *Taylor G.* did not determine this case under the *Geisler* factors because there was no state constitutional claim being challenged therein.

[16] We note that with respect to this claim, the defendant argues that General Statutes § 54-91g (b) prohibits the waiver of a presentence investigation or report as to a juvenile convicted of a class A or B felony, which applied to his conviction. We disagree. The text of P.A. 15-84, § 2, codified as amended at § 54-91g, does not support such an assertion.

Our Supreme Court addressed the issue of retroactivity in the context of § 54-91g in *State* v. *Delgado*, supra, 323 Conn. 801, where it noted: "There are ten sections in P.A. 15-84, four of which specify that they are [e]ffective October 1, 2015, and applicable to any person convicted prior to, on or after

said date. . . . P.A. 15-84, §§ 6 through 9. In contrast, P.A. 15-84, § 2, provides it is [e]ffective October 1, 2015, indicating that the legislature did not intend for this section to apply retroactively. Moreover, there is nothing in the text of General Statutes (Supp. 2016) § 54-91g or the legislative history of P.A. 15-84 to suggest that the legislature intended that all juveniles convicted of a class A or B felony who were sentenced without consideration of the age related mitigating factors identified in *Miller* would be resentenced." (Citations omitted; internal quotation marks omitted.) *State* v. *Delgado*, supra, 323 Conn. 814.

Rather, "the pertinent legislative history clarifies that the legislature did not intend for this provision to apply retroactively. The limited discussion on this topic occurred before the Judiciary Committee. Attorney Robert Farr, a member of the working group of the Connecticut Sentencing Commission, which helped craft the proposed legislative language, discussed how the legislation would affect previously sentenced individuals. See Conn. Joint Standing Committee Hearings, Judiciary, Pt. 2, 2015 Sess., pp. 949, 955–56. He first mentioned this court's decision in *Riley*, in which the defendant in that case had been sentenced to 100 years in prison and then resentenced, and noted that, under the proposed legislation, instead of having to worry about resentencing what would have happened is in [thirty] years, [twenty-one] years from now there will be a parole hearing and then that parole hearing would decide whether [the defendant in *Riley*] was going to be— get another parole hearing . . . . So it gave some resolution to this which was consistent we believe with the federal—with the [United States] Supreme Court cases." (Internal quotation marks omitted.) *State* v. *Delgado*, supra, 814–15 n.9.

———————————————————